# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-2761

_____

United States of America,           *
                                       *

    Plaintiff - Appellee,    *

                                       * Appeal from the United States

v.                                 * District Court for the Northern
                                       * District of Iowa.

Susan Titlbach,           *
                                       *

    Defendant - Appellant.    *

_____

Submitted:  March 14, 2002

Filed:  August 22, 2002

_____

Before LOKEN and JOHN R. GIBSON, Circuit Judges, and GOLDBERG,[1] Judge.

_____

JOHN R. GIBSON, Circuit Judge.

Susan Titlbach appeals from the sentence imposed on her following her conviction for conspiracy to distribute less than 50 grams of a mixture or substance containing methamphetamine.  See 21 U.S.C. §§ 841(a) and 846 (2000).  Titlbach was sentenced to serve 88 months in prison, based in part on the district court's[2]

_____

[1]The Honorable Richard W. Goldberg, Judge, United States Court of International Trade, sitting by designation.

[2]The Honorable Michael J. Melloy, who at the time of trial and sentencing was United States District Judge for the Northern District of Iowa.  Judge Melloy has

findings that Titlbach was involved in the manufacture or distribution of 172.03 grams of methamphetamine mixture and that she perjured herself at trial. On appeal, Titlbach contends that her sentence cannot be based on a greater quantity of drugs than that found by the jury; that the district court's finding as to drug quantity was clearly erroneous; and that the district court erred in enhancing her sentence for obstruction of justice. We affirm the sentence.

Susan Titlbach was tried for conspiracy together with Ron Titlbach, who was her husband at the time of the events in question. Ron Titlbach was clearly the leader of the conspiracy, as reflected by the jury's verdict finding Ron responsible for conspiracy to manufacture as well as to distribute methamphetamine and finding him responsible for more than 50 grams of pure methamphetamine, whereas Susan was only convicted for less than 50 grams of a mixture.

The testimony at trial indicated that the Titlbachs were both methamphetamine users who cooked their own drugs at their house or wherever else they could find a suitable place. Ron was the head cook and Susan assisted as unskilled labor. She cleaned up after Ron, washing up glassware and the grinding machine used to pulverize precursor chemicals and burning trash from the manufacturing process; she chauffered him to buy or steal ingredients for the drugs; she obtained and ground up precursor chemicals; and she helped to put out the chemical fire he started in their kitchen. She also sold methamphetamine to several buyers. The Titlbachs were at the center of a meth-users community. Various friends would help with the manufacturing, and the Titlbachs would pay them in kind or would sell them drugs for cash or barter.

The district court sentenced Susan Titlbach in accord with the Sentencing Guidelines' procedure, which required the court to determine what amount of drugs

since become a Circuit Judge of this Court.

-2-

were involved as relevant conduct during the course of the conspiracy. See USSG § 1B1.3(a) (Nov. 2001). The court sifted through the pre-sentence investigation report and the testimony at trial, rejecting some incidents as not relevant to Susan's offense, and determining that some other incidents were attributable to her, though she argued to the contrary. The court arrived at a total of 172.03 grams of a methamphetamine mixture, which equates to offense level 26 under the guidelines' table. See USSG § 2D1.1 (7)(Nov. 2001). The court also assessed a two-level increase in offense level for obstruction of justice, because the court found that Susan Titlbach had committed perjury at trial by categorically denying any involvement in the methamphetamine business, to the point of denying that she had ever shared methamphetamine with anyone. The result of the district court's guidelines calculation was a range of 87 to 108 months. The court sentenced her to 88 months' imprisonment, four years' supervised release, and a special assessment of $100. The statutory maximum for distribution of an unspecified amount of methamphetamine is twenty years' imprisonment. 21 U.S.C. § 841(b)(1)(C).

Susan Titlbach's first argument on appeal is that it violated the principles of Apprendi v. New Jersey, 530 U.S. 466 (2000), for the district court to base its sentencing calculation on a greater quantity of drugs than the jury specified in the special verdict form. This argument has no viability after the Supreme Court's recent decision in Harris v. United States, 122 S. Ct. 2406 (2002). There, the Court upheld a sentence based, in part, on the district court's finding at sentencing that the defendant brandished a gun while committing the offense. The government had proceeded on the theory that brandishing was not an element of the crime and so did not include it in Harris's indictment or prove it at trial. The district judge's finding of brandishing rendered the defendant subject to a mandatory minimum sentence that would not have otherwise been applicable. The Supreme Court held that this sentencing procedure did not violate the defendant's Fifth or Sixth Amendment rights because the sentence imposed fell within the maximum prescribed for the crime of which the defendant had been properly convicted:

> If the grand jury has alleged, and the trial jury has found, all the facts necessary to impose the maximum, the barriers between government and defendant fall. The judge may select any sentence within the range, based on facts not alleged in the indictment or proved to the jury–even if those facts are specified by the legislature, and even if they persuade the judge to choose a much higher sentence than he or she otherwise would have imposed. That a fact affects the defendant's sentence, even dramatically so, does not by itself make it an element.

122 S. Ct. at 2419 (plurality opinion of Kennedy, J.).[3] Our Circuit precedent correctly anticipated this holding. See, e.g., United States v. Aguayo-Delgado, 220 F.3d 926, 933 (8th Cir.), cert. denied, 531 U.S. 1026 (2000) ; United States v. Pollard, 249 F.3d 738, 739 (8th Cir.) (per curiam), cert. denied, 122 S.Ct. 411 (2001).

Titlbach was indicted for conspiracy to distribute more than 50 grams of methamphetamine, but was found guilty by the jury of conspiracy to distribute less than 50 grams of methamphetamine mixture. The statutory maximum punishment for distribution of less than 50 grams is twenty years. 21 U.S.C. § 841(b)(1)(C). Titlbach received a sentence of only 88 months, which is less than the statutory maximum for her crime. This does not violate her constitutional rights.

Titlbach further attacks the district court's drug quantity finding as clearly erroneous. We can disturb the sentencing court's drug quantity calculation only if the entire record definitely and firmly convinces us that a mistake has been made. United States v. Sales, 25 F.3d 709, 711 (8th Cir. 1994). Because Susan Titlbach was convicted of conspiracy, the drug quantity determination should take into account all acts occurring during her participation in the conspiracy that were known or reasonably foreseeable to her. United States v. Atkins, 250 F.3d 1203, 1211-12 (8th

---

[3]Justice Breyer concurred in the judgment in Harris, even though he believes judges ought to be able to apply sentencing factors even to increase a sentence beyond the statutory maximum. 122 S. Ct. at 2420-21.

Cir. 2001). Where exact figures are not available, the court perforce must estimate. Id. at 1212 (citing USSG § 2D1.1, comment. n.12).

The district court based the quantity calculation on four episodes or series of acts in which Susan actually participated or in which circumstances support the inference that she would have known of the transaction. First, the court summarized Susan's involvement in methamphetamine manufacturing at Robert Symonds' place. Ron Titlbach sometimes went out to Symonds' house in the country to make methamphetamine in the garage. Symonds himself testified that Ron used his house at least five times, and Susan came out almost every time to help Ron with such chores as grinding up ephedrine pills. Barb Frondle said she saw Ron cooking at Symonds' house as many as eleven times, and that Susan was there as many as eight times, cleaning up the equipment used for making the drugs. Symonds' neighbor, Janet Orr, testified that she frequently saw Ron Titlbach and a woman bringing things back and forth from Symonds' house to a white van in the middle of the night and that she saw people at Symonds' house burning explosive things in a barrel. (Susan drove a white van, and the manufacturing process for methamphetamine involves use of aerosol cans and explosive chemicals.) Symonds said that when Ron cooked, he usually made an ounce or ounce and a half of methamphetamine. The court attributed 4.5 ounces, or 127.57 grams, of methamphetamine mixture to Susan from the Symonds' place product. This is a conservative estimate.

Next, the court held Susan responsible for 12.61 grams that Ron sold to Lloyd Cinkan in the Sun-Mart parking lot. Susan circled the parking lot in her van during the deal. The district court considered the meaning of Susan's presence and concluded that she was keeping a look-out during the deal. This conclusion, though not the only one that could be drawn from the evidence, is a permissible interpretation.

Next, the court considered testimony from a convenience store clerk that Susan accompanied Ron on a buying trip to purchase a case of ephedrine pills, which are a precursor ingredient for methamphetamine. The court found that this would produce about 28.35 grams of methamphetamine mixture.

Finally, the court added three and a half grams representing the methamphetamine sold to Albert McMurrin from the Titlbach house. The connection between Susan Titlbach and this transaction was not explicit, but the court stated that this last amount was too small to affect the guidelines range.

We have reviewed the district court's findings and the record supporting them, and we see nothing suggesting clear error. Titlbach's arguments urge us to overturn the district court's credibility determinations, which are well-nigh unreviewable. Atkins, 250 F.3d at 1213.

Titlbach's last argument is that the district court erred in adding two points for obstruction of justice because the court found that Titlbach willfully lied when she testified that she had nothing to do with Ron's methamphetamines business and had never even shared methamphetamine with anyone else. A defendant who commits perjury is subject to an obstruction enhancement under USSG § 3C1.1. United States v. Dunnigan, 507 U.S. 87, 92-93 (1993). A defendant commits perjury if he testifies falsely under oath in regard to a material matter and does so willfully, rather than out of confusion, mistake, or faulty memory. Id. at 94; United States v. Chadwick, 44 F.3d 713, 715 (8th Cir. 1995) (per curiam). We review the district court's finding of obstruction for clear error. United States v. Hollingsworth, 257 F.3d 871, 879 (8th Cir. 2001), cert. denied, 122 S. Ct. 856 (2002), overruled on other ground, United States v. Diaz, 296 F.3d 680 (8th Cir. 2002) (en banc). At trial, Titlbach denied involvement in the methamphetamine manufacturing activities that other witnesses said she participated in, such as cleaning glassware used for manufacturing, taking out the garbage from the manufacturing process, collecting money, and driving Ron

to collect ingredients.  At one point, she denied sharing any methamphetamine with anyone.  Titlbach's testimony conflicts with that of many other witnesses who testified that she was actively involved in the manufacture and distribution of the drugs.  The district court specifically found that Titlbach committed perjury, that her denial of involvement with methamphetamine was willful, and that it was material.  The district court's finding that Titlbach committed perjury was not clearly erroneous, and it was sufficient to support the two-point enhancement.

We affirm the sentence imposed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.