# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2221

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Karl Kessler, | * |
| | * |
| Appellant. | * |

_____

No. 02-2223

_____

Appeals from the United States
District Court for the
Northern District of Iowa.

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Adele Hylback, | * |
| | * |
| Appellant. | * |

_____

Submitted:  December 11, 2002

Filed:  March 3, 2003

_____

Before WOLLMAN, HEANEY, and MELLOY, Circuit Judges.
_____

WOLLMAN, Circuit Judge.


A jury convicted Karl Kessler and Adele Hylback of conspiring to manufacture five grams or more of methamphetamine in violation of 21 U.S.C. § 846. A jury also convicted Hylback of aiding and abetting the manufacture of pure methamphetamine in violation of 21 U.S.C. § 841(a)(1), and Kessler of possessing a firearm while being a user of controlled substances in violation of 18 U.S.C. § 922(g)(3). The district court[1] sentenced Kessler to ninety-seven months in prison for the conspiracy charge, to be served concurrently with a sentence of thirty-seven months for the firearm charge, and Hylback to two concurrent fifty-one month sentences.

Kessler and Hylback appeal, contending that the evidence presented was insufficient to support their convictions. Kessler also contends that the district court erred in enhancing his sentence for obstruction of justice. Hylback argues that the district court erred in determining that the methamphetamine at issue was pure methamphetamine and in calculating her base offense level under USSG § 2D1.1(a)(3). We affirm.

## I. SUFFICIENCY OF THE EVIDENCE

In considering a challenge to the sufficiency of the evidence supporting a guilty verdict, we "look at the evidence in the light most favorable to the verdict and accept as established all reasonable inferences supporting the verdict." United States v. Harmon, 194 F.3d 890, 892 (8th Cir. 1999) (citation omitted). We will uphold the

_____

[1]The Honorable Mark W. Bennett, Chief Judge, United States District Court for the Northern District of Iowa.

conviction unless "no reasonable jury could have found the defendant guilty beyond a reasonable doubt." Id. (quotations omitted).

Kessler, Hylback, and two other individuals, Darren Shave and Mary Smeby, were indicted and charged with drug conspiracy and manufacturing violations. Kessler was also indicted on a related weapons violation. Another conspirator, Richard Stock, was arrested on state charges and subsequently committed suicide while in custody. The charges against these individuals arose from their involvement in a conspiracy to manufacture methamphetamine in Worth County, Iowa.

A jury convicted Kessler and Hylback of conspiring to manufacture five grams or more of methamphetamine in violation of 21 U.S.C. § 846. To convict Kessler and Hylback, the government was required to prove that they knowingly agreed or conspired to manufacture methamphetamine, an illegal act. United States v. Crossland, 301 F.3d 907, 913 (8th Cir. 2002) (citing United States v. Davidson, 195 F.3d 402, 406 (8th Cir. 1999); United States v. Grego, 724 F.2d 701, 704 (8th Cir. 1984)). A conspiracy may consist of a tacit or implicit understanding rather than an explicit or express agreement. Id. (citing United States v. Pintar, 630 F.2d 1270, 1275 (8th Cir. 1980)). The government, further, must have shown that Kessler and Hylback exhibited "some element of cooperation beyond mere knowledge of the existence of the conspiracy." Id. (citing United States v. Duckworth, 945 F.2d 1052, 1053 (8th Cir. 1991)).

Kessler contends that his acquittal on two of the counts charged undermines the credibility of the evidence proffered against him at trial. That " the jury acquitted [Kessler] on charges seemingly supported by his co-conspirator's testimony does not nullify the value of that testimony . . . ." United States v. Woods, 270 F.3d 728, 730 (8th Cir. 2001). Young, a coconspirator, testified that she and Kessler helped Stock, another coconspirator, manufacture methamphetamine. Miller, a third coconspirator, testified that Kessler supported the conspiracy financially. "The credibility of the

witnesses' testimony was for the jury to determine . . . [,]" United States v. Miller, 283 F.3d 907, 912 (8th Cir. 2002) (citation omitted), and the jury found the witnesses' testimony to be credible.

Physical evidence introduced at trial also supported the jury's verdict. Extensive physical evidence was gathered by state and federal agents during searches of Kessler's, Hylback's, and the Shave/Smelby residences in May 2000 and March 2001. During these searches, agents seized drug paraphernalia, residual methamphetamine, firearms and ammunition, a police scanner, and the remains of methamphetamine labs. This evidence indicates Kessler's involvement in the methamphetamine conspiracy. Our review of the record satisfies us that both the physical and testimonial evidence introduced at trial supports the jury's verdict on this count.

Hylback does not contest the jury's finding that she is guilty of conspiring to manufacture and manufacturing methamphetamine. She asserts, however, that the evidence presented was insufficient for the jury to convict her of conspiring to manufacture and aiding and abetting in the manufacture of five grams or more of pure methamphetamine. She challenges the sufficiency of the evidence supporting her conviction, contending that the methamphetamine in question was not pure.

The district court considers the relative purity of methamphetamine, as found by the jury, in determining the penalty to be imposed for its manufacture, distribution, or dispensation. United States v. Beltran, 122 F.3d 1156, 1158-59 (8th Cir. 1997); see 21 U.S.C. § 841(b). The government adduced evidence at trial, including the testimony of criminalist Patricia Kahn of the Iowa Division of Criminal Investigation, concerning the purity of the methamphetamine yielded by the lab. This evidence affirmatively demonstrated that the methamphetamine that Hylback conspired to manufacture and that she aided in and abetted the manufacture of constituted five

grams or more of pure methamphetamine. After carefully reviewing the record, we conclude that the evidence introduced at trial supports the jury's verdict on this count.

## II. SENTENCING ISSUES

"We review the application of the guidelines . . . de novo and factual findings for clear error." United States v. Gomez, 271 F.3d 779, 781 (8th Cir. 2001) (citations omitted). Whether Kessler committed perjury and in so doing obstructed justice is a factual finding, and thus we will reverse the district court's imposition of a sentence enhancement under USSG § 3C1.1 only upon a showing of clear error. United States v. Esparza, 291 F.3d 1052, 1054 (8th Cir. 2002).

"A witness commits perjury if he 'gives false testimony concerning a material matter with the wilful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.'" United States v. Thomas, 93 F.3d 479, 489 (8th Cir. 1996) (citations omitted). "The district court must review the evidence and make [an] independent finding, by a preponderance of the evidence, of perjury in order to impose a sentence enhancement for obstruction of justice." Id. We have affirmed a district court's finding of perjury and subsequent application of sentence enhancements for obstruction of justice where the perjured testimony directly contravened testimony of other witnesses or was contradicted by physical evidence taken from the scene of the crime. Id.; see also United States v. Titlbach, 300 F.3d 919, 923-24 (8th Cir. 2002). As we held in United States v. Willis, 940 F.2d 1136 (8th Cir. 1991), however, "[t]he adjustment cannot be given simply because a defendant testifies in his own behalf and the jury disbelieves him. The district court itself must find that the defendant committed perjury before making the upward adjustment." Willis, 940 F.2d at 1140 (citing United States v. Dyer, 910 F.2d 530, 533 (8th Cir. 1990)); see also United States v. Farmer, 312 F.3d 933 (8th Cir. 2002).

The district court in effect made such a finding in this case. During his testimony, Kessler denied using and manufacturing methamphetamine. The jury, after having considered extensive physical and testimonial evidence that directly linked Kessler to the conspiracy, found beyond a reasonable doubt that Kessler conspired to manufacture methamphetamine. The district court stated, "[T]here was plenty of evidence for the jury to find beyond a reasonable doubt [that] the defendant was guilty. And I understand he continues to maintain his innocence, but I heard the trial testimony, and I think [it constitutes] obstruction of justice." Because the court in effect made a specific finding of perjury and because the imposition of the sentence enhancement for obstruction of justice does not constitute clear error, we affirm on this issue.

Hylback contends that the district court calculated her base offense level incorrectly because the offenses for which she was convicted and sentenced did not involve pure methamphetamine but rather a mixture thereof. The jury found beyond a reasonable doubt that Hylback manufactured and aided in and abetted the manufacture of more than five grams of pure methamphetamine. The district court at sentencing held Hylback responsible for manufacturing at least thirty-two grams of pure methamphetamine and assigned to her a base offense level of twenty-eight under USSG § 2D1.1. See Apprendi v. New Jersey, 530 U.S. 466 (2000); United States v. Diaz, 296 F.3d 680, 684 (8th Cir. 2002) ("[T]he first step in sentencing is for the district court to make findings [including that of drug quantity] and calculate a sentencing range based on those findings."). The district court's determination was based in part on evidence presented by the government's expert, criminalist Patricia Krahn, concerning "the size or capability of [the] laboratory involved." USSG § 2D1.1., cmt. note 12; United States v. Hunt, 171 F.3d 1192, 1196 (8th Cir. 1999) ("To determine the manufacturing capability of the laboratory, it is appropriate to rely upon the testimony of a qualified expert."); see also United States v. Eide, 297 F.3d 701, 705 (8th Cir. 2002). Krahn analyzed samples seized on May 10, 2000, from Hylback's residence at 114 Maple Street in Kensett, Iowa. Krahn also analyzed

samples from materials seized from Kessler's residence at 106 Main Street, Joice, Iowa, on May 10, 2000. Krahn's analysis of the evidence seized at the labs indicated that there was a high ratio of methamphetamine to the by-product CMP and the precursors. This ratio indicates a forty to fifty per cent yield of methamphetamine. After discounting the yield accordingly, Krahn testified that the labs would have yielded approximately thirty-six to forty-five grams of pure methamphetamine. Accordingly, the evidence amply supported the district court's finding upon which it calculated correctly the applicable base offense level. USSG § 2D1.1(a)(3).

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.