# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1102

_____

United States of America,                    *
                                             *
              Plaintiff - Appellee,          *
                                             *     Appeal from the United States
       v.                                    *     District Court for the
                                             *     Northern District of Iowa.
Darnell Brown, Jr., also known as P,         *
                                             *
              Defendant - Appellant.         *
                                             *

_____

Submitted: June 10, 2008
Filed: August 25, 2008

_____

Before MURPHY, BYE, and SHEPHERD, Circuit Judges.

_____

MURPHY, Circuit Judge.

Darnell Brown, Jr., pled guilty to a conspiracy drug offense involving distribution of marijuana and possession with intent to distribute and distribution of 5 grams or more of cocaine base after being convicted of a felony drug offense. The district court[1] sentenced Brown to 360 months and he appeals, arguing that there were several sentencing errors and that his sixth amendment right to effective assistance of counsel was violated. We affirm.

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

Brown was part of a conspiracy to sell cocaine base or crack and marijuana in Cedar Rapids, Iowa. Shauntella Hopkins, Michael Clark, and Rondesha Roundtree were involved in the same conspiracy. Clark had been Brown's friend since childhood and had traveled with him from Chicago to Cedar Rapids a few weeks before a confidential informant made controlled buys in April 2005. The two men stayed in Hopkins's apartment while in Cedar Rapids; she is the mother of Brown's young daughter. Roundtree was a high school student with ties to Iregous Parks, a drug trafficker doing business in the area.

The confidential informant arranged to buy drugs from Brown, whom he knew as "P," through calls to Brown's cell phone. The first two sales occurred on April 12 and 14 in Hopkins's apartment, which is within 1000 feet of a public high school and a playground, and she was present for both. These sales involved about 2.08 grams of crack and 2.7 grams of marijuana.[2] Brown also agreed to sell the confidential informant $300 worth of crack on April 21. He called Roundtree, who was carrying a cell phone and keeping crack for Iregous Parks. She agreed to supply the crack for Brown's sale which was to occur in the parking lot of a local grocery store. Brown, Roundtree, and Clark went there together in Brown's car. Clark drove, Brown sat in the passenger seat, and Roundtree sat in the back with the crack. The informant approached Brown, handed him $300 in recorded currency, and Brown passed him about 2.47 grams of crack.

After the sale Clark drove to a nearby convenience store and went in to buy some items, paying with one of the $10 bills that the confidential informant had given Brown. While Brown and Roundtree were waiting for him, the police arrived and arrested Brown on an outstanding warrant. As he was being arrested, Brown asked Roundtree if she had his money, and the police found $290 and $537 on her after she

[2]Brown claims that the marijuana was sold solely by Hopkins, but the stipulated facts in his plea agreement stated that the marijuana was purchased from both Brown and Hopkins.

waived her Miranda rights.[3] Clark consented to a search of the car, and officers found a bag of crack in the trunk near where Roundtree had been sitting. The bag contained about 4.97 grams of crack. Later that day officers executed a search warrant at the apartment where Brown had been staying with Hopkins. They found two guns and some ammunition in the bedroom shared by Hopkins and Brown. Although Brown denied owning the firearms, he had access to the weapons and there was some evidence that he had handled and possessed them.

Brown, Clark, Hopkins, and Roundtree were charged in an eight count indictment on May 4, 2006. Brown was named in all eight counts and faced charges of conspiracy, felon in possession of a firearm and ammunition, possession with intent to distribute crack and distribution of crack, and distribution of marijuana. At his arraignment Brown pled not guilty to all counts, and he was detained pending trial. Defense counsel was appointed in May 2006. On June 22, 2006 Brown participated in a proffer interview in which he admitted that he had regularly sold cocaine, crack, and marijuana from approximately June 2003 until his April 2005 arrest. Brown states that he had not realized that this information could be used against him. Although his attorney had provided him with a copy of the proffer agreement, he says he has substantial difficulty reading and mistakenly believed it was a plea agreement. In August 2006 Brown filed a pro se motion for new counsel, which the district court granted after a hearing.

On defense counsel's motion Brown underwent an evaluation to help determine his competency for trial. During his psychological examination Brown indicated that he had experienced physical and sexual abuse as a child and had run away from home to escape the abuse; he also reported a long history of alcohol and drug use. Brown

___

[3]Although Roundtree initially told police that the money belonged to Brown, she later testified that she had been carrying some money for Parks in her bra. As the police approached, Brown threw her the money from the controlled sale. She stuffed that money in her bra and the crack in the trunk of the car.

was found competent to stand trial and to assist in his own defense, but the January 18, 2007 psychological report diagnosed him with antisocial personality disorder, polysubstance dependence, and depressive disorder not otherwise specified, although medical staff suspected that his psychotic symptoms were due to malingering. Brown reported taking prescription medications for depression and paranoia.

Meanwhile, Brown's codefendants had entered into plea agreements and provided information against him. Brown decided to negotiate a plea agreement with the government and changed his plea to guilty on Count 1, which charged a conspiracy to distribute marijuana and to possess with intent to distribute and distribute 5 grams or more of cocaine base after being convicted of a felony drug offense. In exchange the government agreed to dismiss the remaining charges. The district court accepted Brown's plea and conducted a sentencing hearing on December 21, 2007 and January 3, 2008. Several witnesses testified, including Brown, Clark, Roundtree, Mario Williams, a fellow inmate of Brown's, and Agent Moyle, an officer who had interviewed Brown.

After hearing testimony and arguments, the district court calculated Brown's advisory guideline sentencing range. Brown's drug quantity was based on the average daily sales of cocaine and crack he had admitted in his debriefing interview for the period between June 2003 and April 2005. He was ultimately held responsible for 935 grams of cocaine base and 354 grams of cocaine, which amounted to 5,680.80 kg of marijuana equivalents pursuant to § 2D1.1 of the United States Sentencing Guidelines Manual (U.S.S.G). Because the sales had occurred within 1000 feet of a protected location, his base offense level was 35 under U.S.S.G §§ 2D1.1 and 2D1.2. The district court imposed a two level increase for possession of a dangerous weapon during the offense, a two level increase for Brown's supervising role in the offense, and a two level increase for obstruction of justice. The court denied Brown's request for a two level downward adjustment for acceptance of responsibility. With an adjusted offense level of 41 and criminal history category III, his guideline sentencing

range was 360 months to life. Brown requested a downward departure or variance based on his mental and emotional condition, his history of child abuse, and his illiteracy, and the government requested an upward departure or variance. After denying both motions, the district court imposed a sentence of 360 months, at the bottom of the guideline range.

Brown appeals his sentence, arguing that the district court made several sentencing errors, that the sentence imposed is unreasonably long, and that he was denied his sixth amendment right to effective assistance of counsel. The government denies each of the alleged sentencing errors, and it argues that his 360 month sentence is not unreasonable and that his ineffective assistance of counsel claim is not ripe for review.

Brown first challenges the district court's imposition of a two level increase in his offense level based on his organizing role in the offense, arguing that there was no evidence that he exercised the requisite control and authority over another participant. The government contends that Clark's evidence that he served as Brown's driver for drug transactions and received little remuneration sufficiently supported the increase. We review the upward adjustment of Brown's sentence based upon his aggravating role for clear error, see United States v. Jimenez-Gutierrez, 425 F.3d 1123, 1124 (8th Cir. 2005), and under this standard we will reverse only if we have a "definite and firm conviction" that the district court made a mistake. United States v. Willis, 433 F.3d 634, 636 (8th Cir. 2006) (quotation omitted).

The district court determined that Clark had been led, managed, or supervised by Brown and therefore increased his offense level pursuant to U.S.S.G. § 3B1.1(c). That section provides for a two level increase in the offense level if the defendant was "an organizer, leader, manager, or supervisor in any criminal activity" which involved fewer than five participants, and we broadly construe the terms manager or supervisor. See U.S.S.G. § 3B1.1(c); United States v. Rosas, 486 F.3d 374, 376-77 (8th Cir.

2007). Clark testified at the sentencing hearing that he had driven Brown to several drug transactions in Cedar Rapids and in Davenport, Iowa. Explaining the events on the day of the third controlled buy, Clark said that he was helping Hopkins move a TV when Brown called and "told" Clark to "come get him," without telling him why, "so [Clark] had left to go get him," and then drove him to the deal. On this record, we are satisfied that the district court neither clearly erred in determining that Brown had played an organizing role in the offense nor in enhancing his sentence on that basis. See United States v. Maejia, 928 F.2d 810, 816 (8th Cir. 1991) (affirming organizing role enhancement for defendant who recruited two drivers for drug deal); United States v. Zimmer, 299 F.3d 710, 724 (8th Cir. 2002) (management or supervision of only one other participant or one transaction suffices for organizing role enhancement).

Brown also contends that the district court erred by enhancing his sentence for obstruction of justice under U.S.S.G. § 3C1.1, suggesting his false testimony was immaterial to the sentencing issues and may have been due to a mistake or faulty memory. The government argues that the increase was appropriate and that Brown's falsehoods under oath were neither mistaken nor immaterial.

We review the district court's factual findings underlying an adjustment for obstruction of justice for clear error, giving great deference to the sentencing court's determination. See United States v. Whiting, 522 F.3d 845, 849 (8th Cir. 2008).[4]

_____

[4]While the interpretation of the sentencing guidelines is subject to de novo review, United States v. Minnis, 489 F.3d 325, 333 (8th Cir. 2007), whether a defendant "commit[s] perjury and in so doing obstruct[s] justice is a factual finding, and thus we will reverse the district court's imposition of a sentence enhancement under U.S.S.G. § 3C1.1 only upon a showing of clear error." United States v. Kessler, 321 F.3d 699, 702-03 (8th Cir. 2003), citing United States v. Esparza, 291 F.3d 1052, 1054 (8th Cir. 2002); cf. United States v. Armilio, 705 F.2d 939, 941 (8th Cir. 1983) (although materiality under 18 U.S.C. § 1623 is a question of law, its proper determination "depends upon the factual situation in which the testimony was given.") (quotation omitted).

Under U.S.S.G. § 3C1.1 a defendant is subject to a two level enhancement if he "testifies falsely under oath in regard to a material matter and does so willfully rather than out of confusion or mistake." United States v. Mendoza-Gonzalez, 363 F.3d 788, 796 (8th Cir. 2004); see also United States v. Dunnigan, 507 U.S. 87, 94-95 (1993); U.S.S.G. § 3C1.1 comment. n.4. When a defendant objects to an obstruction enhancement based on perjury, the district court must make findings that the defendant willfully gave false testimony concerning a material matter in the case. Mendoza-Gonzalez, 363 F.3d at 796; see also Whiting, 522 F.3d at 850.

The district court determined that Brown had lied under oath at the sentencing hearing and that his lie was material because it was an attempt to discredit Mario Williams, a government witness. Brown was a suspect in the shooting of a man known as Boo Man, and Williams testified that Brown had asked him to help him falsely implicate a man known as Shoo Boo in that shooting with the hope of obtaining a sentencing decrease.[5] Brown contradicted Williams's testimony, stating "I don't even know no Shoo Boo. I never even heard of him." Agent Moyle subsequently testified that Brown had told him during an interview on May 14, 2007 that he knew Shoo Boo, that he had provided a physical description of Shoo Boo, and that he had said that Shoo Boo used rental cars to sell crack. Nothing in the record indicates that Brown's emphatic denial of knowing Shoo Boo was due to faulty memory or mistake. Brown argues that his statements about Shoo Boo are not material because they did not substantially affect the case's outcome, but for purposes of the obstruction enhancement a material statement is one which "if believed, would

---

[5]Although Williams testified that Brown told him to say that Deonte Williams shot Boo Man, the overall plan was to "tell on Shoo Boo." As Williams explained, "So [Brown] said, 'You just say that Deonte shot him. You say Deonte shot him. So when we pull Deonte in it, that's going to lead to pulling Shoo Boo in it' . . . and it will lead to the arrest of Shoo Boo." When asked why Brown wanted Williams to provide this false information to the government, Williams said, "it would basically coincide . . . with what he told them, and it would make it . . . seem true . . . ."

tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1 comment. n.6.

The issue under determination here was whether to apply an obstruction of justice enhancement. If the district court had believed Brown's false testimony, that could have influenced its view of the credibility of the other witnesses at sentencing and its understanding of facts relevant to an appropriate sentence for his case.[6] The district court found that Brown willfully provided false testimony at sentencing. In explaining why Brown's lie was material the court explained, "[Brown] testified under oath before this Court that he didn't know Shoo Boo, never heard of him. Now, one would think that's kind of a – sort of beside the point, but it was very material in this sentencing, because by denying that he knew Shoo Boo, he was attempting to discredit Mr. Williams' testimony, who was also a witness at this sentencing. And of course, Mr. Williams is the one who testified about alleged statements defendant made about the shooting that we've been arguing about and for which the government has been seeking enhanced penalties. So it's very material in this case, lying to this Court under oath, about if he knew Shoo Boo." As this passage suggests, the most plausible reason for Brown to lie about knowing Shoo Boo was to try to avoid the obstruction of justice enhancement sought by the government, a different theory than the one ultimately

---

[6]The government offered at least three theories for why an obstruction of justice increase was appropriate, and Williams' testimony was relevant to all three. First, Williams testified that Brown had told him that he shot Boo Man himself which supported the government's theory that Brown falsely denied involvement in that shooting. Second, Williams testified that Brown asked him to give false information that Deonte Williams had shot Boo Man, which supported the government's theory that Brown had asked others to provide false information. Third, Williams testified that Brown had approached him with his fists up and ready to fight in the jail the morning before the sentencing hearing; that supported the government's theory that Brown committed perjury by falsely denying his threatening behavior. Although the district court did not accept any of the government's theories in applying the obstruction of justice enhancement, Brown could not have known that at the time he lied about knowing Shoo Boo.

adopted by the district court itself. See United States v. Flores, 959 F.2d 83, 87 (8th Cir. 1992) ("[L]ying for the purpose of obtaining a lighter sentence constitutes obstruction of justice within the meaning of section 3C1.1.") (citations omitted); see also United States v. Kessler, 321 F.3d 699, 703 (8th Cir. 2003) ("We have affirmed a district court's finding of perjury and subsequent application of sentence enhancements for obstruction of justice where the perjured testimony directly contravened testimony of other witnesses . . . .") (citations omitted). The district court was able to judge Brown's testimony in light of all the evidence, and we conclude that it did not clearly err in applying an adjustment for obstruction of justice.

Brown further argues that the district court wrongly denied his requested downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1, arguing that his guilty plea and cooperation with authorities entitles him to this reduction. We review a district court's factual determination on whether a defendant has demonstrated acceptance of responsibility for clear error, giving the decision great deference. United States v. Brandt, 419 F.3d 810, 812 (8th Cir. 2005); see also U.S.S.G. § 3E1.1 comment. n.5 ("The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility."). An obstruction of justice enhancement under § 3C1.1, such as Brown received, "ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct" as required for a § 3E1.1 reduction. U.S.S.G. § 3E1.1 comment. n.4; see also United States v. Calderon-Avila, 322 F.3d 505, 508 (8th Cir. 2003) (per curiam). Although there may be "extraordinary cases" in which both adjustments apply, U.S.S.G. § 3E1.1 comment. n.4, a case in which "a reduction for acceptance of responsibility is warranted in spite of a defendant's obstructive conduct 'would be extremely rare.'" United States v. Perez, 270 F.3d 737, 739 (8th Cir. 2001), quoting United States v. Honken, 184 F.3d 961, 969 (8th Cir. 1999). To determine whether a case is "extraordinary," a district court should consider "the totality of the circumstances, including the nature of the appellee's obstructive conduct and the degree of appellee's acceptance of responsibility." Honken, 184 F.3d at 968.

The district court determined that Brown did not qualify for an acceptance of responsibility reduction because he had lied to the court during the sentencing hearing on a material matter. To establish an extraordinary case for purposes of § 3E1.1, a defendant "must show more than a guilty plea and a cessation of obstructive conduct." Honken, 184 F.3d at 970. Brown's false testimony occurred after his guilty plea, and "post-plea obstructive conduct would almost certainly be disqualifying." Id. Moreover, his plea agreement and cooperation with authorities do not distinguish his case from a run of the mill case. See id. ("Virtually every defendant who receives an acceptance of responsibility adjustment enters a plea of guilty."). We therefore see no clear error in the district court's denial of a § 3E1.1 adjustment.

Brown next objects to the district court's denial of his motion for a downward departure or variance and argues that his sentence is unreasonably long. His request for a departure or variance was based on his mental and emotional disorders, the physical and sexual abuse he suffered as a child, and his difficulty reading and writing. A sentencing court's discretionary decision not to depart downward is not generally reviewable on appeal, however, and Brown does not allege that the district court had an unconstitutional motive or mistakenly believed it lacked authority to grant the departure. See United States v. Johnson, 517 F.3d 1020, 1023 (8th Cir. 2008); see also United States v. Rice, 332 F.3d 538, 540 (8th Cir. 2003). We therefore decline to review the district court's denial of the departure. After reviewing all the circumstances of this case and the sentencing transcript, we conclude that the district court did not abuse its discretion in denying Brown's request for a downward variance. See United States v. Allebach, 526 F.3d 385, 388 (8th Cir. 2008).

We review the sentence imposed for reasonableness, first "ensur[ing] that the district court committed no significant procedural error." Gall v. United States, 128 S.Ct. 586, 597 (2007); see also Whiting, 522 F.3d at 849. If the district court's decision is "procedurally sound," we proceed to review the sentence for substantive reasonableness under an abuse of discretion standard. Gall, 128 S.Ct. at 597; Whiting,

-10-

522 F.3d at 849. We may apply a presumption of reasonableness to a sentence within the properly calculated guideline range but are not required to do so. See Rita v. United States, 127 S.Ct. 2456, 2465 (2007); Gall, 128 S.Ct. at 597; Whiting, 522 F.3d at 849. In imposing a sentence under 18 U.S.C. § 3553(a), a sentencing court abuses its discretion if "it fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only the appropriate factors but commits a clear error of judgment in weighing those factors." United States v. Watson, 480 F.3d 1175, 1177 (8th Cir. 2007).

The district court correctly calculated Brown's advisory guideline range and imposed a 360 month sentence which fell at the very bottom of the range. It considered all of the relevant factors under § 3553(a), commenting that Brown's criminal history category of III understated his long and serious criminal history and noting that Brown had a high risk of recidivism. We conclude that the sentence imposed "accounted for the seriousness and breadth" of Brown's offenses and is not unreasonable. See United States v. Kowal, 527 F.3d 741, 749 (8th Cir. 2008).

Finally, Brown contends that his prior attorney was constitutionally ineffective. Brown asserts that the attorney should have explained the terms and consequences of the proffer agreement to him but instead improperly assumed that he could read it on his own. Brown claims to be functionally illiterate, and he alleges that his attorney's omissions led him to mistake the proffer agreement for a plea agreement and that he then he admitted substantial drug dealing during his proffer interview. These admissions increased his drug quantity by nearly a hundredfold and triggered a substantially longer sentence. Ineffective assistance of counsel claims are better raised under 28 U.S.C. § 2255, however. United States v. Cook, 356 F.3d 913, 919 (8th Cir. 2004). Although such a claim may be properly considered on direct appeal "where the record has been fully developed, where counsel's ineffectiveness is readily apparent, or where to delay consideration of the claim would lead to a plain

miscarriage of justice," United States v. Davis, 452 F.3d 991, 994 (8th Cir. 2006), none of those exceptional circumstances pertain here and the record has not yet been developed. See id. Accordingly, this claim is premature and would be more appropriately raised in a post conviction proceeding under § 2255.

For the foregoing reasons, we affirm the judgment of the district court.

BYE, Circuit Judge, concurring, in part, dissenting, in part.

I respectfully dissent from the portion of the majority's decision, affirming the district court's application of the obstruction of justice enhancement and its denial of an acceptance of responsibility reduction. Additionally, although I reluctantly agree the district court did not err in applying a role enhancement under U.S.S.G. § 3B1.1(c), I write separately to express the basis for my decision.

I

This Circuit has not always been consistent in describing the standards governing our review of a district court's decision to impose an obstruction of justice enhancement. Compare United States v. McMannus, 496 F.3d 846, 850 (8th Cir. 2007) ("We review de novo a sentencing court's determination that section 3C1.1 applies to specific conduct, but we review for clear error the court's factual findings. . . . The district court accepted the factual basis . . . but determined that § 3C1.1 did not apply to this specific conduct. Therefore, our review is de novo.") (citations omitted); United States v. Minnis, 489 F.3d 325, 333 (8th Cir. 2007) ("[W]e review the interpretation and application of [U.S.S.G. § 3C1.1] de novo."); with United States v. Red Elk, 368 F.3d 1047, 1052 (8th Cir. 2004) ("Perjury at trial is an appropriate basis for the [obstruction of justice] enhancement. . . . Whether Red Elk committed perjury is a factual finding that we review for clear error.") (citations omitted); United States v. Kessler, 321 F.3d 699, 702-03 (8th Cir. 2003) ("Whether Kessler committed

perjury and in so doing obstructed justice is a factual finding, and thus we will reverse the district court's imposition of a sentence enhancement under U.S.S.G. § 3C1.1 only upon a showing of clear error.") (citation omitted). The majority recognizes the inconsistency, acknowledging both that "the interpretation and application of the sentencing guidelines" is subject to de novo review, Minnis, 489 F.3d 325, 333 (8th Cir. 2007), and that the application of U.S.S.G. § 3C1.1 is subject to clear error review, Kessler, 321 F.3d 699, 702-03 (8th Cir. 2003). Ante at 6, n.4. But, rather than seeking to reconcile these seemingly conflicting cases and determine the standard of review appropriate to the particular issue before us, the majority, without any kind of analysis, simply concludes Brown's challenge is subject to review "for clear error, giving great deference to the sentencing court's determination." Id. at 6 (citing United States v. Whiting, 522 F.3d 845, 849 (8th Cir. 2008)). Because I find that conclusion far from self-evident and because I believe we must be guided by principledreasoning, rather than by arbitrary application of general statements of law, I cannot agree.

A

An appellate court must "give due deference to the district court's application of theguidelines to the facts." 18 U.S.C. § 3742(e).[7] In Koon v. United States, 518

---

[7]While Booker excised the portion of § 3742(e) that directed courts of appeals to apply the de novo standard to a district court's departure from the Guidelines range it left intact the remaining portions of § 3742(e), including the portion requiring appellate courts to "give due deference to the district court's application of the guidelines to the facts." As Justice Stevens noted in his concurrence in Rita v. United States, 127 S. Ct. 2456 (2007): "By leaving those portions of the statute intact while severing the portion mandating a de novo standard of review, Booker restored the abuse-of-discretion standard identified" in Koon v. United States, 518 U.S. 81 (1996), and other earlier Supreme Court cases. Id. at 2471 (Stevens, J., concurring). See also United States v. Haack, 403 F.3d 997, 1003 (8th Cir. 2005) ("In determining the appropriate guidelines sentencing range to be considered as a factor under § 3553(a), we see nothing in Booker that would require the court to determine the sentence in any manner other than the way the sentence would have been determined pre-Booker.").

U.S. 81 (1996), the Supreme Court held § 3742(e)'s "due deference" standard is not fixed, but operates on a "sliding scale":

> The deference that is due depends on the nature of the question presented. The district court may be owed no deference, for instance, when the claim on appeal is that it made some sort of mathematical error in applying the Guidelines; under these circumstances, the appellate court will be in as good a position to consider the question as the district court was in the first instance.

Id. at 98. Subsequent cases have identified a number of factors for determining where on the "sliding scale" a particular determination falls. Those factors include: (1) whether the question turns on issues district courts may have comparatively greater expertise or be better suited to address, and (2) whether the question primarily involves a legal interpretation of a guidelines provision (suggesting de novo review), or instead involves the application of a clearly-established, well-understood legal standard or principle to a detailed fact pattern (indicating "clear error" review). Buford v. United States, 532 U.S. 59, 65-66 (2001). "Clear error" review is particularly appropriate in the latter type of cases because "the fact-bound nature of the decision limits the value of appellate court precedent." Id.

Applying those factors to the issue here, it is clear we should give little deference to the district court's determination. Brown does not dispute the court's factual findings. He admits his statements about Shoo Boo were false. He does not dispute the court's conclusion these false statements, if believed, could have affected the court's view of Mario Williams' credibility. Rather, Brown argues these findings are insufficient to establish his false statements were material. The district court is in no better position to address this issue than is an appellate court. Brown's argument raises an issue about the scope of the materiality requirement. While the question is not purely a question of law, it is more akin to a question of legal interpretation than to a question of fact. While the facts of the case are important to the ultimate determination, the question before us does not turn on the credibility of any witnesses

-14-

or the inferences to be drawn from particular facts. Here, unlike in <u>Buford</u>, the facts are secondary to the legal issue. The question here is more akin to the question "whether, based on the totality of the circumstances, [the defendant] was entitled to the two-level acceptance-of-responsibility reduction as a result of his guilty pleas to the grouped drug offenses," which this Court reviewed de novo. <u>United States v. Wattree</u>, 431 F.3d 618, 623 (8th Cir. 2005).

Accordingly, although I accept the court's relevant findings of fact and the inferences it draws from those facts, I give little deference to the court's ultimate conclusion those facts established Brown's statements were material.

B

Turning to the merits of Brown's argument, under the Guidelines, a sentencing court is required to adjust a defendant's offense level upward if "the defendant willfully . . . attempted to obstruct or impede[] the administration of justice with respect to the . . . sentencing . . . of the instant offense." U.S.S.G. § 3C1.1. This adjustment applies when a defendant has provided "materially false information to a judge or magistrate." <u>Id.</u> cmt. n.4(f). Information is "material" when, "if believed, [it] would tend to influence or affect the issue under determination." <u>Id.</u> cmt. n.6.

According to the majority, Brown's false statements were material because they "could have influenced [the district court's] view of the credibility of the *other witnesses* at sentencing and its understanding of facts relevant to an appropriate sentence for his case." Ante at 8 (emphasis added). But, this is nothing more than a conclusory statement. The majority provides no explanation as to how the district court's view of the credibility of other witnesses would affect Brown's sentence, nor does it identify any facts relevant to an appropriate sentence, which the district court might not understand. That is because it cannot.

While perhaps Brown's false statements, if believed, would have influenced the district court's view of the other witnesses at sentencing, this, standing alone, is insufficient to establish the materiality of the false statements. The circumstances of a particular case must show the evidence presented by the particular witnesses' testimony was relevant, in some way, to resolution of one of the disputed issues. Only then can it be said that the false statements, if believed, "would tend to influence or affect the issue under determination." No such showing can be made in this case.

At the sentencing hearing, the district court found Brown's false statements, if believed, would have affected its view of the credibility of one witness: Mario Williams. Williams testified in support of one of the government's theories for application of the obstruction enhancement. Prior to sentencing, the government recommended Brown's PSR include a two-level enhancement for obstruction of justice. The government provided two theories for application of the obstruction enhancement. First, the government argued the enhancement was appropriate because during one of his proffer interviews Brown falsely denied his involvement in Boo Man's shooting and falsely denied possessing a firearm on the night of the shooting. Second, the government argued the enhancement was appropriate because Brown had attempted to persuade Williams to provide false information to federal investigators regarding Boo Man's shooting. Williams' testimony related to only the latter argument.

In identifying the issues for determination and, in ruling on those issues at the sentencing hearing, the district court did not address this latter argument, on the merits or otherwise. Specifically, in announcing its rulings and relevant findings "on the issues that [were] litigated," the district court provided the following summary of the issues under determination related to the obstruction enhancement:

> On the obstruction of justice, again, the government's argument is obstruction of justice should be imposed because [Brown] lied at his proffer, denying his involvement in the Cedar Rapids shooting and

-16-

denying possessing a firearm the night of the shooting. After Mr. Brown decided to take the stand, the government now argues also that obstruction is appropriate because he committed perjury, in other words, lied under oath to the Court.

Sent. Tr. at 170. Nothing elicited from Williams related to either of these issues. This conclusion is further bolstered by the district court's ruling on the obstruction enhancement issue:

In this particular case, the Court is unable to reach a decision as to whether or not Mr. Darnell Brown lied at his proffer about his involvement with the shooting in Cedar Rapids and denied possessing the firearm the night of the shooting.[8] The Court also seriously questions whether or not, even if those had been established, whether it would be appropriate to enhance for obstruction of justice.

Id. at 170-71. The district court, for whatever reason, simply did not view the government's argument that Brown tried to persuade Williams to provide the government false information as an "issue under determination" at Brown's sentencing. Because this was the only subject about which Williams testified, it necessarily follows that any negative affect Brown's testimony, if believed, would have had on the district court's view of Williams' credibility, it could not have, and, as a matter of fact, did not have, any affect on the obstruction enhancement issue or any other issue under determination. Therefore, the district court could not base the materiality of Brown's false statements on the potential affect on witness credibility.

---

[8]To the extent the government had intended Williams' testimony to establish Brown lied at his proffer interview, by corroborating the testimony of Agent Moyle, it was clearly unsuccessful and not because Brown lied about knowing Shoo Boo. Williams testified Brown asked him to falsely implicate Deonte Williams in Boo Man's shooting. Agent Moyle, on the other hand, testified at the proffer interview, Brown stated Brandon Sykes shot Boo Man.

The only other basis the majority identifies, which the district court did not itself mention, is the potential Brown's false statements, if believed, would have had to influence the district court's "understanding of facts relevant to an appropriate sentence for his case." Ante at 8. I am not sure exactly what this means, but, regardless, I fail to see any way Brown's false statements, if believed, would have affected the district court's understanding of the relevant facts. Whether Brown knew Shoo Boo is so far removed from the relevant issues of this case, the district court even noted that "one would think that's kind of a – sort of beside the point." The offense for which Brown was being sentenced was conspiracy to distribute marijuana and cocaine base. The conspiracy, which included Brown, Clark, Hopkins, and Roundtree, took place in April 2005. No one alleges Shoo Boo was linked in any way to this conspiracy. Further, other than Brown, it does not appear the other members of the conspiracy even knew of Shoo Boo.

Moreover, the majority states Brown asked Williams to falsely implicate Shoo Boo in Boo Man's shooting "with the hope of obtaining a sentencing decrease." Ante at 7. This is simply incorrect. While Williams provided several different accounts of what false information Brown had asked Williams to provide the government,[9] Williams never suggested Brown wanted to implicate Shoo Boo in Boo Man's shooting. Williams testified Brown asked him to implicate Deonte Williams in Boo Man's shooting, which would somehow lead to Shoo Boo's arrest.

More importantly, even if Brown had asked Williams to implicate Shoo Boo in Boo Man's shooting, Boo Man's shooting in November 2004 is in no way related to the April 2005 conspiracy to distribute drugs, which was the offense to which

---

[9]It is surprising to me the district court would suggest the truth about whether Brown knew Shoo Boo would affect its view of Williams' credibility. If there was a reason to question Williams' credibility one would think it would be that he could not get his story straight on the more pertinent subject what false information Brown asked Williams to provide the government.

Brown pleaded guilty and for which Brown was being sentenced. According to the government, because Count 2 of the Indictment charged Brown with being a felon in possession of a firearms and one of the firearms listed in the Indictment was the firearm used to shoot Boo Man, the fact that Brown was a suspect in Boo Man's shooting is relevant conduct. But, as Agent Moyle testimony shows, no matter how you spin the facts, it strains credibility to suggest Boo Man's shooting is part of Brown's relevant conduct in this case:

Q.      Regarding the shooting in November 2004, I guess I'm not clear how that is part of this investigation that is concerning a conspiracy to distribute cocaine that was involving Shauntella Hopkins, Darnell Brown, Michael Clark, and Ms. Roundtree. How is it part of that conspiracy?

A.      In the proffer interview we wanted to clear up that issue and his involvement in the shooting, and thus the reason we asked him some questions about that, and I'm not sure if those are very credible answers.

Q.      But the shooting itself isn't related to Mr. Brown's activities in connection with the conspiracy to distribute cocaine in April of 2005, is it?

A.      Not to my knowledge. I know that – I know that drug dealers as a whole will get involved in altercations and disturbances and stuff, so maybe – maybe the underlying theme regarding the shooting may have been narcotics related. I'm not sure.

Q.      But you don't know for sure –

A.      Correct –

Q.      – still trying to figure that out?

A.      – for sure. . . .

Q.      Okay. Do you know if you or anyone on the task force has interviewed Mr. Corbett [Boo Man] about who was the shooter, who did he see?

-19-

A. You know, I can't recall what information he may have given.

Q. Clearly, he has not definitely identified Mr. Brown as the shooter or charges would have been filed, wouldn't you agree?

A. There would be a lot of different reasons why charges may or may not have been filed. I'm not sure what – if he was able to identify him or not.

Q. Would you agree though that if he had definitely been able to identify Mr. Brown as the shooter, that would be a pretty important piece of evidence?

A. It would be important, however – I mean as you know, you have to corroborate it by several different ways to be able to charge accordingly.

Q. And so far no charges have been filed for that shooting?

A. Correct.

Sent. Tr. at 89-90, 90-91.

In the end, Brown's sentence has been enhanced by almost 100 months because he lied about knowing Shoo Boo; an individual whose only link to this case is Williams' testimony Brown asked him to implicate Deonte Williams in the unrelated shooting of Boo Man, which would somehow lead to Shoo Boo's arrest. Today's decision reads the materiality requirement out of U.S.S.G. § 3C1.1, cmt. n.6, and provides a district court with authority to use even the most irrelevant false statement as a basis for a two-level obstruction of justice enhancement (and, usually a denial of a two- or three-level acceptance of responsibility reduction) by simply stating the false statement could maybe affect the court's view of the credibility of other witnesses. I simply cannot concur in such a result.

## II

The district court denied Brown an acceptance of responsibility reduction based on its determination Brown obstructed justice. Because such determination was erroneous, the district court could not rely on it to deny Brown an acceptance of responsibility reduction. See United States v. Thurmon, 278 F.3d 790, 793 (8th Cir. 2002) ("Based on the record and our finding that Thurmon did not obstruct justice, we find that the district court erred by refusing to reduce Thurmon's sentence for acceptance of responsibility.").

## III

The district court also increased Brown's offense level under U.S.S.G. § 3B1.1(c), after concluding Brown "led, managed, or supervised" co-conspirator Michael Clark. At the sentencing hearing Clark testified that, several weeks prior to Brown's arrest for the instant offense, he had met with Brown in Chicago and followed him to Cedar Rapids, where he, along with Brown, stayed at Brown's "baby mama's" (the mother of his child) apartment. Clark testified he "drove [Brown] around" to sell crack maybe "five, six times." When asked what he was "getting" for his assistance to Brown, Clark testified "[w]e would drink, smoke weed, buy something to eat." Based on Clark's testimony, the court found Brown ran a drug trafficking operation, brought Clark to Cedar Rapids from Chicago, and had Clark drive him to drug transactions in exchange for nominal remuneration. The district court concluded this evidence was sufficient to establish Brown "led, managed, or supervised" co-conspirator Clark.

On appeal Brown argues the district court's factual findings are insufficient to qualify him as a "leader, manager, or supervisor." According to Brown, "it appears that Clark may have been using Brown" for a place to stay, and for food, alcohol, and drugs. Thus, he contends "[t]he fact that he and Brown went out together a few times

to deliver Brown's crack cocaine, and Clark happened to be the driver, does not categorically place Clark in the position of being "controlled" by Brown.

Brown may well be correct such evidence would not, as a matter of law, suffice to establish a defendant's role as a supervisor or manager. The problem, however, is his view of the evidence, as recited above, differs markedly from the district court's view. "Where there are two permissible views of the evidence, the district court's choice between the two cannot be clearly erroneous." United States v. Plancarte-Vasquez, 450 F.3d 848, 854 (8th Cir. 2006). Although, after reviewing the sentencing transcript, I find the district court's view of Clark's testimony, both on direct examination and on cross, to be a real stretch, I cannot say it is clearly impermissible. Thus, I must determine whether Brown was a supervisor or manager based on the district court's view of the evidence, rather than Brown's view.

Under our precedent, although it is a very close call, I cannot say the district court's determination–Brown was a supervisor based on his use of Clark to drive him to drug transactions, in exchange for food, drink, shelter, and marijuana–was incorrect. See United States v. Maejia, 928 F.2d 810, 815 (8th Cir. 2001) (holding that defendant may be considered to have a leadership role when he hired one driver and recruited another); United States v. Alexander, 982 F.2d 262, 267 (8th Cir. 1992) (holding that a defendant may be seen as supervising the four drivers he used in his criminal activities). Therefore, I concur in the majority's holding, affirming the role in the offense enhancement.

IV

Because Brown's false testimony he did not know Shoo Boo was not material to any issue at sentencing, the district court erred in enhancing his sentence under U.S.S.G. § 3C1.1 and in denying him an acceptance of responsibility reduction under U.S.S.G. § 3E1.1. I, therefore, respectfully dissent from the majority's decision.

_____