# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 08-2173

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Arkansas. |
| Jimmie Jay Lawson, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: March 11, 2009
Filed: April 29, 2009

_____

Before GRUENDER, ARNOLD and BENTON, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Jimmie Jay Lawson conditionally pled guilty to knowingly possessing a computer containing child pornography in violation of 18 U.S.C. § 2252(a)(4)(B), preserving his right to appeal the district court's[1] denial of his motion to suppress statements he made to a special agent of the Federal Bureau of Investigation ("FBI"). The district court sentenced Lawson to 63 months' imprisonment. Lawson appeals

_____

[1] The Honorable Jimm Larry Hendren, Chief Judge, United States District Court for the Western District of Arkansas.

the denial of his motion to suppress and the denial of the Government's motion for a one-level downward departure pursuant to U.S.S.G. § 5K1.1. We affirm.

On June 15, 2004, a state search warrant was issued authorizing Bentonville, Arkansas police officers to search Lawson's home for evidence that he possessed child pornography. The police seized two computers from Lawson's home and sent the seized computers to the FBI. Forensic analysis revealed child pornography on the computers.

On June 22, 2004, FBI Special Agent Scott Ledford and Bentonville Police Department Detective Mark Jordan went to Lawson's home to interview him. According to Agent Ledford's testimony, upon arriving at Lawson's home, he advised Lawson and Lawson's fiancee that he was there to interview Lawson regarding the search warrant and the images found on the computers. Agent Ledford asked Lawson if he would be willing to answer questions about the matter and advised him that he was not required to do so. Agent Ledford informed Lawson that regardless of what Lawson said during the interview, he did not intend to arrest Lawson at that time. The interview lasted less than an hour. Lawson did not indicate that he wanted to end the interview, and his freedom of movement was not restricted. During the interview, Lawson acknowledged that he had downloaded child pornography onto the computers. Lawson testified that he did not recall Agent Ledford advising him that he did not have to answer questions and claimed that he would not have talked to Agent Ledford if he had known he had the right to refuse to do so. He further testified that although Agent Ledford told Lawson that he would not be arrested, Lawson did not believe him. Finally, Lawson claimed that while the officers were not rude and did not verbally or physically threaten him, he did not feel free to leave.

Lawson moved to suppress the statements he made during the interview. He argued that the statements should have been excluded because he had not been advised of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). The Government argued

that the *Miranda* warnings were not necessary because Lawson was not in custody during the interview. The district court denied the motion, and Lawson entered a conditional guilty plea. At sentencing, the Government filed a motion for a one-level downward departure pursuant to § 5K1.1 based on Lawson's substantial assistance to the Government. The district court denied the Government's motion, concluding that it did not believe Lawson's assistance was substantial enough to warrant a downward departure, and sentenced Lawson to 63 months' imprisonment, a sentence within the advisory sentencing guidelines range. Lawson appeals the denial of the motion to suppress and the denial of the § 5K1.1 motion.

Lawson first argues that the district court erred in denying his motion to suppress the statements he made to Agent Ledford during the interview at his home because Agent Ledford failed to advise him of his rights under *Miranda*. "[W]arnings are required when interrogation is 'initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" *United States v. New*, 491 F.3d 369, 373 (8th Cir. 2007) (quoting *Miranda*, 384 U.S. at 444). "[A] suspect is entitled to *Miranda* protection when he is 'in custody,' and . . . 'the ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with formal arrest.'" *Id.* (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (per curiam)). We must determine whether, under the totality of the circumstances, "a reasonable person would have felt at liberty to terminate the interrogation . . . and cause the agent to leave." *Id.* "We review the district court's factual findings for clear error and its legal conclusions, including the ultimate question of custody, de novo." *United States v. Ollie*, 442 F.3d 1135, 1137 (8th Cir. 2006) (italics omitted); *see also United States v. LeBrun*, 363 F.3d 715, 719 (8th Cir. 2004) (en banc).

The district court credited Agent Ledford's testimony that he advised Lawson that Lawson did not have to answer Agent Ledford's questions, that Lawson was not going to be arrested, and that Lawson's movement was not restricted in any way.

These findings of fact were not clearly erroneous. Lawson was not restrained, he was interviewed in his own home, he was told that he did not have to answer the questions, he was not physically threatened, and he was interviewed for less than one hour. Thus, under the totality of the circumstances we conclude that Lawson was not in custody during the interview. Therefore, Agent Ledford was not required to warn Lawson of his *Miranda* rights, and the district court properly denied Lawson's motion to suppress the statements he made to Agent Ledford. *See, e.g.*, *United States v. Martin*, 369 F.3d 1046, 1057 (8th Cir. 2004) (finding that the defendant was not in custody when the interview took place in his home, he was told the interview was voluntary, he was not threatened, and he was not arrested at the conclusion of the interview).

Lawson also argues that the district court erred in denying the Government's motion for a one-level downward departure under § 5K1.1. We generally do not review a district court's decision not to depart downward under § 5K1.1. *Cf. United States v. Brown*, 539 F.3d 835, 841 (8th Cir.) ("A sentencing court's discretionary decision not to depart downward is not generally reviewable on appeal."), *cert. denied*, 555 U.S. ---, 129 S. Ct. 658 (2008); *United States v. Williams*, 324 F.3d 1049, 1050 (8th Cir. 2003) (per curiam) (holding that the extent to which a district court exercises its authority to depart downward under § 5K1.1 is not reviewable). We may review a refusal to depart downward if the district court erroneously believed that it lacked the authority to do so, *United States v. Robinson*, 536 F.3d 874, 878 (8th Cir.), *cert. denied*, 555 U.S. ---, 129 S. Ct. 745 (2008), or if the district court had an unconstitutional motive in doing so, *Williams*, 324 F.3d at 1050. At the sentencing hearing, the district court explained that it was "a reach to say that [Lawson's assistance] warrants a departure out of the recommended guidelines," that "the motion is not supported," and that it would deny the motion because it did not find "a basis to grant it under the circumstances." Thus, the district court was aware of its authority to depart downward. Further, Lawson does not argue that the district court had an

-4-

unconstitutional motive in denying the motion.  Therefore, we cannot review the district court's decision to deny the motion for downward departure.

Accordingly, the judgment of the district court is affirmed.

_____