# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3265

_____

United States of America,           *

                         *

        Appellee,         *

                         *   Appeal from the United States

   v.                     *   District Court for the

                         *   Northern District of Iowa.

Mario Rosas,             *

                         *

        Appellant.       *

_____

Submitted: February 13, 2007
Filed: May 16, 2007

_____

Before O'CONNOR, Associate Justice (Ret.),[1] WOLLMAN, and SMITH, Circuit
Judges.

_____

WOLLMAN, Circuit Judge.

Mario Rosas was convicted of conspiring to distribute methamphetamine and possessing methamphetamine with the intent to distribute, violations of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. The district court[2] imposed concurrent sentences of 360 months' imprisonment and five years' supervised release for each offense.

_____

[1]The Honorable Sandra Day O'Connor, Associate Justice (Ret.), Supreme Court of the United States, sitting by designation.

[2]The Honorable Mark W. Bennett, then Chief Judge, United States District Court for the Northern District of Iowa.

Rosas appeals from his sentence, contending that the district court erred in applying a three-level aggravating role enhancement under United States Sentencing Guidelines (U.S.S.G.) § 3B1.1(b) (2006). We affirm.

## I.

Rosas was arrested in September 2005 after participating in a controlled buy during which he sold methamphetamine to Juan Delaluz (hereinafter "Juan"), who was acting as a confidential informant. Officers subsequently searched Rosas's residence and a separate apartment that was rented in Rosas's name. During the search of the apartment, officers found items associated with the operation of a drug storehouse and "cut lab." These items included mixing and cutting agents, cooking equipment, drug packaging materials, scales, and a cardboard box that was sealed with foam insulation and lined with coffee grounds – presumably to prevent illegal narcotics from being detected. Officers also found approximately one and one-half pounds of crystal methamphetamine in the apartment, nearly one pound of which was determined to be 98% pure. Tri-State Drug Task Force Officer Dane Wagner testified that the apartment appeared to be used for the sole purpose of storing and mixing methamphetamine, as it contained no furniture, clothing, or food. Wagner also stated that the operation was extensive and fairly well organized.

Juan testified that Rosas had previously fronted five or six one-half ounce quantities of methamphetamine to him for sale. Juan further stated that he and his brother, Nicomedis Delaluz (hereinafter "Nicomedis"), had made two trips to California. On their second trip, they brought back a pound of methamphetamine, purchased with funds provided by Rosas, which Juan delivered to Rosas. According to Juan, Nicomedis worked for Rosas delivering drugs from California.

Nicomedis testified that he had been hired by Rosas to make at least five trips to California to pick up methamphetamine and bring it back to Iowa. According to

Nicomedis, approximately two pounds of methamphetamine were brought back on each trip. Nicomedis further stated that Rosas initiated the trips, that the two were not partners, and that he had helped package drugs for Rosas.

Following Rosas's conviction, the district court, based on the evidence recounted above, found him to be a supervisor of an otherwise extensive criminal activity and imposed a three-level enhancement under U.S.S.G. § 3B1.1(b).

## II.

A defendant's offense level may be increased by three levels if he "was a manager or supervisor . . . and the criminal activity involved five or more participants or was otherwise extensive . . . ." U.S.S.G. § 3B1.1(b). Rosas contends that the district court erred in imposing the three-level enhancement because he was not a manager or supervisor and the drug operation was not otherwise extensive. We review for clear error the district court's factual findings underlying the imposition of a sentencing enhancement based on the defendant's role in the offense. United States v. Carpenter, 422 F.3d 738, 748 (8th Cir. 2005), *cert. denied*, 126 S. Ct. 1115 (2006).

"We construe the terms 'manager' or 'supervisor' broadly under U.S.S.G. § 3B1.1." United States v. Erhart, 415 F.3d 965, 973 (8th Cir. 2005), *cert. denied*, 126 S. Ct. 1181 (2006). For purposes of determining whether a defendant played a managerial or supervisory role in an offense, application note four to § 3B1.1 directs the sentencing court to consider such factors as:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

The evidence shows that Rosas hired and directed Nicomedis to make at least five trips to California to acquire methamphetamine, that Nicomedis was not considered a partner in the operation, and that Nicomedis helped package drugs for Rosas. In addition, Rosas supplied the money for the methamphetamine that Juan and Nicomedis had obtained from California and fronted methamphetamine to Juan for sale. This evidence supports a finding that Rosas was a manager or supervisor of the criminal activity, for it shows that he not only arranged, directed, and organized the operation, including the trips to California, but that he also enlisted the help of both Nicomedis and Juan. See United States v. Mendoza, 341 F.3d 687, 694 (8th Cir. 2003) (upholding the imposition of a sentencing enhancement under § 3B1.1 when the defendant, among other things, hired an individual to transport methamphetamine from California to Missouri); Erhart, 415 F.3d at 973 ("[T]he simple fact that a defendant recruits new members into a conspiracy supports a finding of the defendant being a manager or supervisor."). Furthermore, Rosas was not required to be in complete control of either Nicomedis or Juan to be considered a manager or supervisor, as Rosas asserts. See United States v. Pitts, 173 F.3d 677, 681-82 (8th Cir. 1999) ("The fact that appellant did not control his co-conspirator's every move does not defeat the finding that he played a leadership role in the offense."). The district court therefore did not err in finding Rosas to be a manager or supervisor of the criminal activity.

The number of persons involved in the operation is of relevance in determining whether the organization is otherwise extensive. United States v. Brockman, 183 F.3d 891, 900 (8th Cir. 1999); U.S.S.G. § 3B1.1, cmt. n.3. As we have recognized, however, other factors, such as "the nature and complexity of the operation and its geographical reach," United States v. Vasquez-Rubio, 296 F.3d 726, 729 n.3 (8th Cir. 2002), as well as "the amount of loss caused by the offense," Brockman, 183 F.3d at 900, may also be considered.

The record shows that Rosas occupied a separate apartment for the sole purpose of operating a drug storehouse and cut lab. In this apartment, as set forth above, officers found mixing and cutting agents, cooking equipment, drug packaging materials, scales, a cardboard box that was set up in a way to prevent the detection of illegal narcotics, and a significant amount of high purity methamphetamine. Based on this evidence, the relative infrequency of finding such an operation, and the volume of high purity methamphetamine found, Officer Wagner classified Rosas's operation as an extensive and fairly well organized one. In addition to this evidence, the record also establishes that Rosas coordinated at least five cross-country trips to California to pick up methamphetamine and that Nicomedis and Juan had also been involved in various aspects of the operation. Given this evidence, we cannot say that the district court erred when it found Rosas's operation to be otherwise extensive.

The judgment is affirmed.

_____