# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2601

_____

United States of America,

        Appellee,

v.

Collin McDonald,

        Appellant.

\*
\*
\*
\*
\*  Appeal from the United States
\*  District Court for the Northern
\*  District of Iowa.
\*
\*
\*
\*

_____

Submitted: March 12, 2008
Filed: April 9, 2008

_____

Before RILEY, GRUENDER, and SHEPHERD, Circuit Judges.

_____

RILEY, Circuit Judge.

Collin McDonald (McDonald) pled guilty to one count of bank robbery, in violation of 18 U.S.C. § 2113(a). The district court[1] sentenced McDonald to 175 months imprisonment, to be served consecutively to sentences previously imposed in Missouri state and federal court. McDonald challenges his sentence, arguing the district court erred by imposing: (1) a two-level increase for being a leader, organizer, manager, or supervisor of criminal activity under United States Sentencing Guidelines

---

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

(U.S.S.G.) § 3B1.1; (2) a two-level increase for attempting to obstruct justice under U.S.S.G. § 3C1.1; and (3) a two-level increase for reckless endangerment during flight under U.S.S.G. § 3C1.2. McDonald also appeals the part of the sentence which orders the instant sentence to run consecutively to McDonald's other undischarged terms of imprisonment. We affirm.

## I.    BACKGROUND

On November 25 and December 2, 2003, McDonald robbed two banks in the Kansas City, Missouri, area. McDonald and his girlfriend, Tiffany Callahan (Callahan), left Kansas City on December 5, 2003 to get away from the police.

That same day, as they drove through Cedar Rapids, Iowa, McDonald took the Collins Road Exit off Interstate 380 and decided to rob the Farmers State Savings Bank on Collins Road in Marion, Iowa.[2] McDonald asked Callahan to go into the bank to determine whether there were any police inside. Callahan walked around the lobby, and then returned to the car and reported to McDonald that she did not see a security guard in the bank. McDonald and Callahan drove away from the area to plan an escape route. While driving around, Callahan unsuccessfully tried to talk McDonald out of robbing the bank.

McDonald asked Callahan to hold the door of the bank open in case the bank had an alarm which would cause the door to lock. When they entered the bank, Callahan held the door while McDonald approached the tellers and demanded money. McDonald hid a knife up his right shirt sleeve during the robbery. McDonald and Callahan were in the bank less than one minute, making off with $8,315 in cash.

---

[2]McDonald chose the Collins Road Exit and this bank in Collins Square because his first name is Collin.

The following day, McDonald decided they should buy a different car because the one they were driving had been used to commit multiple bank robberies. McDonald and Callahan bought a car in South Sioux City, Nebraska, abandoning the car used in the robberies in the parking lot of their hotel. McDonald controlled the expenditures of the stolen money, and paid $1,950 from the proceeds of the robberies to purchase the car.

On December 10, McDonald and Callahan checked into a hotel in Lincoln, Nebraska, under an alias. Law enforcement had been tracking McDonald's and Callahan's movements. On the afternoon of December 10, officers made contact with McDonald and Callahan outside their hotel room. The couple retreated and barricaded themselves in their room, and a standoff ensued. McDonald initially claimed to have a gun. Officers cleared adjacent rooms of any guests. The Lincoln SWAT team was called in to assist at the scene. During the standoff, McDonald threw two chairs through a closed window in their second floor room. Officers below were close to where the chairs and broken glass landed. When McDonald and Callahan looked out their window, presumably to escape, officers yelled for McDonald and Callahan to get their hands up. McDonald and Callahan again retreated into their hotel room. Officers negotiated with McDonald and Callahan by talking on the phone and through the door. Near the end of negotiations, McDonald admitted he lied about having a gun. After a standoff of approximately two and one-half hours, officers forcibly entered the room and took McDonald and Callahan into custody.

Callahan met with authorities on February 10, 2004, to give a proffer concerning her involvement in the bank robbery. At some point after Callahan met with authorities, McDonald wrote Callahan a letter which read in part:

> I hope and pray to God you did not say anything about a weapon when
> you were in Iowa. Because it will make it worse on me and you even if

they promised you not to prosecute you that's not always true I would hate to see you go to jail it's a horrible place especially since you are very sensitive you would have God with you No matter what don't ever forget that you will also have my soul to share with you everywhere you go

At McDonald's sentencing hearing, Callahan also testified that, when she visited McDonald in jail after his arrest, he held up a note that said, "Don't tell them about the knife."

McDonald ultimately pled guilty to one count of bank robbery, in violation of 18 U.S.C. § 2113(a). At the time of sentencing, McDonald was serving a 54-month sentence imposed in the Western District of Missouri for the Kansas City bank robberies. McDonald was previously ordered to serve a one year consecutive sentence for forgery in Bates County, Missouri. McDonald was then scheduled to begin another thirteen year sentence for a March 6, 2004, attempt to escape from jail in Bates County, Missouri, followed by an additional seven year term for armed criminal action and second degree assault arising from his escape attempt. Thus, at the time of sentencing, McDonald had already been sentenced to serve 54 months for the Kansas City bank robberies, followed by 252 months for his Missouri state court convictions. After applying increases for McDonald's aggravating role in the instant offense, obstruction of justice, and reckless endangerment during flight, the district court sentenced McDonald to 175 months imprisonment, to be served consecutively to McDonald's other undischarged terms of imprisonment.

## II.  DISCUSSION
### A.  McDonald's Role in the Offense

McDonald claims the district court erred in assessing a two-level increase for his role in the offense, arguing Callahan was an equal partner and willing participant in the robbery. "We review for clear error the district court's factual findings underlying the imposition of a sentencing enhancement based on the defendant's role

-4-

in the offense." United States v. Rosas, 486 F.3d 374, 376 (8th Cir. 2007) (citation omitted). Under U.S.S.G. § 3B1.1(c), "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity [not involving five or more participants], increase by 2 levels." The terms "organizer," "leader," "manager," and "supervisor" are to be construed broadly. Rosas, 486 F.3d at 376; United States v. Willis, 433 F.3d 634, 636 (8th Cir. 2006). In determining whether a defendant had a managerial or supervisory role in an offense, application note 4 to U.S.S.G. § 3B1.1 directs the district court to consider such factors as:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1, cmt. n.4

At the sentencing hearing, Callahan testified McDonald made the decision to rob a bank, chose the Farmers State Savings Bank on Collins Road, asked Callahan to enter the bank and see if any police were in the bank, and instructed her to hold the door open for him so the door would not lock. McDonald was the one who carried a knife and demanded money while Callahan held the door. Callahan also testified it was McDonald who decided they should buy a different car because the one they were driving had been used to commit multiple bank robberies. Callahan further testified McDonald paid the purchase price for the new car from the proceeds of the robberies, as McDonald held the cash and controlled the expenditures. This evidence was more than sufficient to support a two-level enhancement for McDonald's aggravating role in the offense.

**B.  Obstruction of Justice**

McDonald argues the district court erred in applying a two-level enhancement for obstruction of justice because Callahan's testimony was not credible.  "We review a district court's factual findings underlying an obstruction of justice enhancement for clear error[.]"  United States v. Peters, 394 F.3d 1103, 1105 (8th Cir. 2005) (citation omitted).  "When the factual findings by the trial court are based on the credibility of witnesses, they are virtually unreviewable."  United States v. Moore, 242 F.3d 1080, 1081 (8th Cir. 2001) (internal quotation marks and citation omitted).

U.S.S.G. § 3C1.1 provides:

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

In McDonald's case, the district court based the obstruction of justice enhancement on: (1) Callahan's testimony that, when she visited McDonald while he was incarcerated, he showed her a note urging her not to say anything about the knife; and (2) the letter McDonald wrote to Callahan which stated in part, "I hope and pray to God you did not say anything about a weapon when you were in Iowa.  Because it will make it worse on me and you even if they promised not to prosecute you[.]"  The district court did not err by finding Callahan's testimony "totally believable," nor did it err by imposing a two-level increase for obstruction of justice based on McDonald's attempts to prevent Callahan from revealing McDonald carried a concealed knife during the bank robbery.

**C.  Reckless Endangerment During Flight**

McDonald contends the district court erred by imposing a two-level enhancement for reckless endangerment during flight because insufficient evidence

existed to support the enhancement. "We review for clear error a district court's findings with respect to reckless endangerment during flight." United States v. Bazaldua, 506 F.3d 671, 674 (8th Cir. 2007). Under U.S.S.G. § 3C1.2, "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer, increase by 2 levels." The term "during flight" should be "construed broadly" and includes conduct "in the course of resisting arrest." U.S.S.G. § 3C1.2, cmt. n.3.

McDonald acknowledges he is responsible for "his own conduct and for conduct that he aided or abetted, counseled, commanded, induced, procured, or willfully caused." (quoting U.S.S.G. § 3C1.2, cmt. n.5). However, McDonald contends the reckless endangerment enhancement does not apply because McDonald did not aid, abet, counsel, command, induce, procure, or cause the SWAT team to be dispatched or the police forcibly to enter his hotel room to end the standoff. McDonald also claims he should not be subject to the two-level increase because he never threatened anyone and there was no evidence throwing chairs through the closed second story window was intended to harm anyone or created a substantial risk to anyone.

These arguments are unpersuasive. First, it is not the actions of law enforcement, in dispatching the SWAT team or breaking down the door of McDonald's hotel room, that "recklessly created a substantial risk of death or serious bodily injury to another person." Instead, it is McDonald's conduct (barricading himself in a hotel room for over two hours, claiming to be armed with a gun, and hurling furniture through a closed second story window) that constituted reckless endangerment. Even though McDonald lied about having a gun, officers were nevertheless at heightened risk of physical injury as a result of having to enter McDonald's hotel room with force to arrest him. Officers cleared adjacent rooms of any guests due to the perceived threat. Anyone stationed on the ground in the vicinity of McDonald's hotel room window could have been hit by the falling chairs or broken

glass. Ample evidence existed to support the district court's finding the risks McDonald created in his attempt to avoid arrest warranted a two-level increase for reckless endangerment during flight.

### D. Consecutive Sentences

McDonald argues the district court abused its discretion and imposed an unreasonable sentence by ordering his sentence to run consecutively to McDonald's other undischarged terms of imprisonment. "We review a district court's decision to impose a consecutive or concurrent sentence for reasonableness." United States v. Winston, 456 F.3d 861, 867 (8th Cir. 2006). To allow for meaningful appellate review, "[t]he district court must explain its reasoning for imposing a concurrent or consecutive sentence[.]" Id.

The district court considers the factors set forth in 18 U.S.C. § 3553(a) to determine whether to impose a consecutive or concurrent sentence. See United States v. Shafer, 438 F.3d 1225, 1227 (8th Cir. 2006) (quoting 18 U.S.C. § 3584(b)). "When the defendant is subject to an undischarged term of imprisonment for an unrelated crime, 'the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment.'" Id. (quoting U.S.S.G. § 5G1.3(c) (policy statement)). The district court has "wide discretion" under U.S.S.G. § 5G1.3(c) to order a sentence to be served consecutively to an undischarged sentence. See United States v. Mathis, 451 F.3d 939, 941 (8th Cir. 2006).

In McDonald's case, the district court noted, "[f]or all the reasons stated by [the government], it's clear to me that a consecutive sentence is appropriate in this case under the advisory [G]uidelines." The district court also stated it had "considered all the other statutory factors, even though I may not have discussed them specifically. I have considered them very carefully in deciding what the appropriate sentence is." The sentencing transcript makes clear that the district court gave substantial

consideration to all the appropriate factors. The district court was well within its broad discretion in ordering McDonald's sentence to be served consecutively to his other undischarged terms of imprisonment.

## III.  CONCLUSION

Having carefully reviewed the sentencing record and the parties' arguments, we conclude ample evidence supported the district court's imposition of: (1) a two-level increase for McDonald's aggravating role in the offense; (2) a two-level increase for McDonald's attempts to obstruct justice; and (3) a two-level increase for reckless endangerment during flight. We further conclude the district court did not abuse its discretion by ordering McDonald's sentence to run consecutively to his other undischarged terms of imprisonment. The reasonable sentence imposed by the district court is affirmed.

_____