# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2185

_____

| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Timothy J. Adamson, | * |
| | * |
| Appellant. | * |

_____

No. 09-2582

_____

Appeals from the United States
District Court for the
District of Minnesota.

| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Galo Eric Quintero, | * |
| | * |
| Appellant. | * |

_____

No. 09-2606

_____

| United States of America, | * |
| | * |
| Appellee, | * |
| | * |

| | |
|---|---|
| v. | * |
| | * |
| Jerry Joe Larson, | * |
| | * |
| Appellant. | * |

_____

No. 09-2666

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Marshall Thomas Bakken, | * |
| | * |
| Appellant. | * |

_____

Submitted: March 12, 2010
Filed: June 24, 2010

_____

Before RILEY, Chief Judge,[1] BRIGHT, and WOLLMAN, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Timothy J. Adamson, Marshall Thomas Bakken, and Jerry Joe Larson pleaded guilty to one count of conspiracy to distribute and possession with intent to distribute 500 grams or more of methamphetamine and five kilograms or more of cocaine, in

_____

[1]The Honorable William Jay Riley became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 1, 2010.

violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. The district court[2] sentenced them to sixty, thirty-six, and twenty-four months' imprisonment respectively. On appeal, Adamson, Bakken, and Larson argue that the district court erred in applying the advisory guidelines when it denied them each a two-level minor role reduction.

A jury convicted Galo Eric Quintero of conspiracy to distribute and possess with intent to distribute 500 grams or more of methamphetamine and five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846, and 851. He was sentenced to 300 months' imprisonment. He argues on appeal that the district court (1) committed plain error when it admitted evidence of firearms possession and an alleged drive-by shooting and (2) erred in sentencing Quintero as a manager or supervisor of five or more participants during the course of the offense. We affirm.

I.

The defendants were involved in a drug trafficking organization that moved 2.5 metric tons (more than 5500 pounds) of cocaine from Columbia to Mexico for eventual importation into the United States between January 2005 and September 2007. Roman Garcia facilitated the shipment of cocaine in the United States. He employed couriers to transport the cocaine to high volume customers in New York, New Jersey, Pennsylvania, Massachusetts, Illinois, Ohio, Michigan, and Minnesota. Garcia used fourteen different couriers during the conspiracy, twelve of whom were recruited by co-conspirator Manny Valdez. Typically recruiters referred couriers to the drug trafficking organization and the recruiters and the courier would then travel to California or Mexico so that the organization could screen the potential courier. The organization usually paid its couriers between $600 and $700 per kilogram of controlled substance transported.

---

[2]The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota.

Couriers were provided with automobiles retrofitted with hidden compartments, known as "traps," that were capable of holding multiple kilograms of drugs or packages of currency. Loads of controlled substances were transported east and the couriers returned to California or traveled to New York with loads of currency. To avoid reporting requirements, couriers were instructed to make multiple cash deposits under $10,000 to various bank accounts. The organization utilized partially legitimate businesses and shell corporations to launder the drug proceeds.

Adamson, Bakken, and Larson served as couriers for the organization. Adamson transported 225 kilograms of cocaine, 10 pounds of methamphetamine, and approximately $1,745,000 in cash. The organization provided Adamson with multiple vehicles, which he helped license with Minnesota plates. Adamson also received wire transfers and deposited money into bank accounts at the request of the organization. Larson transported 18 kilograms of cocaine and $90,000 in drug proceeds. He also made deposits at the direction of the organization and obtained pre-paid cellular telephones, which he shipped to a member of the organization. Bakken transported approximately 66 kilograms of cocaine and $220,000 in drug proceeds. Bakken traveled to Mexico to meet the leaders of the organization and also traveled to Massachusetts, New York, Michigan, Pennsylvania, and Illinois while working for the organization. He obtained Minnesota license plates for the vehicle he used.

Quintero had a more extensive role in the organization. He operated a major receiving destination for cocaine on Staten Island, New York. To reach Quintero, couriers phoned him at a phone number provided by Valdez or Garcia once they were nearing Staten Island. Quintero would then meet the courier at a nearby hotel, store, or restaurant and then lead the courier to the delivery location, typically his mother's home. The courier would park the vehicle in the home's garage and unload the drug packages.

In August 2007, law enforcement officials obtained a warrant to search Quintero's mother's home. Firearms were discovered in a vehicle that was parked in

-4-

the garage. Although the vehicle was registered to Quintero's brother, Quintero had been observed in the vehicle.

At Quintero's trial, eight couriers, including Adamson and Bakken, testified that they had made deliveries to Quintero. The couriers described delivering hundreds of kilograms of cocaine to Quintero and delivering and receiving millions of dollars in drug proceeds. Couriers would bring money from other locations to New York, which would be used to purchase more drugs or to pay off prior purchases. Adamson testified that he would deliver loads of currency to Quintero and would then count the money with Quintero. On occasion, Quintero gave couriers money for their expenses returning to the west coast. Two New York City police officers testified about two occasions on which they observed Quintero deliver hundreds of thousands of dollars while they were conducting surveillance regarding money laundering. Drug Enforcement Agency agent John Francolla testified regarding the firearms seized from the garage. Additionally, Francolla testified that Quintero told him that he had "shot up" a house belonging to a member of a crime family who had failed to pay him for some unknown debt.

In accordance with its plea agreements with them, the government requested that Adamson, Bakken, and Larson receive a two-level downward adjustment in offense level because of their role as minor participants. Although the district court denied the requests, it nonetheless sentenced each of the three defendants below the advisory guidelines range after taking into account the sentencing factors and the government's downward departure motion for substantial assistance.

The district court determined that Quintero was a manager or supervisor of criminal activity and imposed a three-level enhancement. After calculating an advisory guidelines range of 360 months to life imprisonment, and noting the twenty-year mandatory minimum, the district court granted a sixty-month variance and sentenced Quintero as set forth above.

II.

## A. Adamson, Bakken, and Larson

Adamson, Larson, and Bakken argue that the district court committed procedural error when it declined to grant them a two-level adjustment in offense level for having a minor role in the offense and in turn not applying U.S. Sentencing Guidelines Manual (U.S.S.G.) § 2D1.1(a)(3)[3] to further reduce the offense level. This adjustment applies to a defendant who is "less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2 cmt. n.5.

> A defendant's role in the offense is measured by the relevant conduct for which he is held responsible. Once the district court has determined the relevant conduct, each participant's actions should be compared against the other participants, and each participant's culpability should be evaluated in relation to the elements of the offense.

United States v. Johnston, 353 F.3d 617, 626 (8th Cir. 2003) (per curiam) (citations and internal quotation marks omitted). Whether a defendant played a minor role is a question of fact that we review for clear error. United States v. Deans, 590 F.3d 907, 909 (8th Cir. 2010).

In declining to grant Adamson a two-level minor role adjustment, the district court explained:

> During the course of his involvement in this conspiracy, [Adamson] transported approximately 225 kilograms of cocaine, 10 pounds of methamphetamine and $1,745,000 on behalf of the organization. . . . Now he was a courier. There is no question about that. It is also

---

[3]While this provision was changed to § 2D1.1(a)(5) in the 2009 edition of the U.S.S.G., we refer to it as § 2D1.1(a)(3), based on the guidelines that were in effect when these defendants were sentenced.

disclosed, I think, in the facts portion of the case, of the investigation, that he earned something in the neighborhood of $120,000 of cash money for his labors. That is not in my view a minor or minimal participant, and I simply cannot do that.

The district court continued, "[Adamson] is lower than some, but you could then make the argument that General Noriega's chief distributing lieutenants who distributed thousands of kilos are in fact minor or minimal vis-a-vis the leader of the organization."

At Bakken's sentencing the district court explained that the amount of drugs that Bakken had transported and the amount he had earned were too great for a minor role reduction. The district court commented that in the six months that Bakken was involved in the conspiracy he earned approximately "more or less what a federal judge gets to take home after a year's pay." The district court commented on Larson's knowing participation in a distribution scheme and the amount of money that Larson earned from the transactions and concluded that it was different from the participation of individuals that engage in body packing (internal concealment) of drugs or lookouts, whose roles may be very minor.

Adamson, Bakken, and Larson first argue that instead of comparing their culpability with other participants in the drug trafficking organization, the district court improperly compared their conduct with others outside the organization or failed to make any comparison. In comparing Adamson's conduct with that of General Noriega's distributors, the district court was illustrating the point that being less culpable than some other member of the organization does not entitle the defendant to a minor role adjustment. See United States v. Bush, 352 F.3d 1177, 1182 (8th Cir. 2003). The district court properly considered the relevant conduct for which Adamson was responsible in comparison to other members of the organization and did not commit clear error in its factual determination that Adamson's role was not minor. Similarly, although a comparison of Bakken's illicit earnings with a federal judge's

net pay may not have been the most apt point of reference, the court's statement contextualized the scale of Bakken's criminal endeavor. Lastly, Larson's contention that the district court failed to consider his culpability compared with other participants in the organization is also without merit. During Larson's sentencing the district court explained that the denial of the minor role reduction was a "continuing theme throughout these cases," indicating that it had compared Larson's conduct with other participants in the organization.

Second, Adamson, Bakken, and Larson contend that they are less culpable than other co-conspirators and therefore they are entitled to a minor-role reduction. We have routinely rejected this argument, and our case law is clear that "merely showing the defendant was less culpable than other participants is not enough to entitle the defendant to the adjustment if the defendant was 'deeply involved' in the offense." Bush, 352 F.3d at 1182; see, e.g., United States v. Cubillos, 474 F.3d 1114, 1120 (8th Cir. 2007). All three men were active, necessary, and well-compensated members of this conspiracy. Their roles as couriers do not necessarily entitle them to the minor role adjustment. United States v. Alverez, 235 F.3d 1086, 1090 (8th Cir. 2000). Transportation is an important component of an illegal drug distribution organization, and Adamson's, Larson's, and Bakken's roles were such that the district court did not clearly err in its determination that their roles were not minor. See United States v. Martinez, 168 F.3d 1043, 1048 (8th Cir. 1999) ("Transportation is a necessary part of illegal drug distribution, and the facts of the case are critical in considering a reduction for minor role.").

Next, Bakken and Larson argue that the district court impermissibly created sentencing disparities and failed to address "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Bakken points to another courier who transported a larger quantity of drugs and was granted a minor role reduction. Larson points to two other participants who both transported more drugs and recruited couriers, yet they were treated, like Larson, as average participants. The district court

had no obligation to consider the § 3553 factors in its determination that these defendants were average participants.

Finally, Bakken argues that it would be contrary to § 2D1.1(a)(3) to allow drug quantity to affect the availability of a § 3B1.2 minor role reduction. Once a defendant is granted a minor role reduction, he is entitled to a further offense-level reduction under § 2D1.1(a)(3) if his base offense level from the drug quantity table is 32 or higher. As the defendant's base offense level rises, the additional reduction in offense level increases. For example, if a defendant receives a mitigation role adjustment and the base offense level from the drug quantity table is 32, his offense level is decreased by two levels, whereas if the base offense level is 38, his offense level is decreased by four levels. U.S.S.G. § 2D1.1(a)(3). Although Bakken has aptly described the function that drug quantity plays under § 2D1.1(a)(3), we reject his contention that § 2D1.1(a)(3) limits the consideration of drug quantity when deciding the availability of a minor role reduction. We have routinely considered drug quantity when reviewing the denial of a minor role reduction. See United States v. Carpenter, 487 F.3d 623, 626 (8th Cir. 2007) (no minor role reduction warranted when defendant distributed three pounds of methamphetamine during the conspiracy); United States v. Tinajero, 469 F.3d 722, 726 (8th Cir. 2006) (no minor role reduction when the defendant was trusted with more than a pound of drugs).

We conclude that the district court did not clearly err in denying a § 3B1.2 offense-level adjustment to Adamson, Bakken, and Larson. Accordingly, we need not separately consider their contention that the district court should have applied the § 2D1.1(a)(3) reduction in offense level, because it is dependent upon application of the § 3B1.2 reduction.

## B. Quintero

### 1. Admissibility of Evidence

Quintero argues that the firearms recovered from his mother's garage and the account of his involvement in a drive-by shooting were improperly admitted into evidence under Federal Rules of Evidence 401 and 403. Because Quintero did not object in a timely manner to the introduction of this evidence, we review for plain error. See United States v. Marcus, 2010 WL 2025203, at *3 (May 24, 2010). To establish plain error Quintero must demonstrate that (1) there was an error that he did not affirmatively waive, (2) the error was clear and obvious, (3) the error affected his substantial rights, and (4) the error seriously affected the fairness, integrity or public reputation of judicial proceedings. Id.

Quintero contends that the firearms seized from his mother's garage were not relevant to whether he conspired to distribute cocaine, arguing that the firearms were in the trunk of a car registered to his brother and that there was no evidence that Quintero knew that they were there. Evidence is relevant if it "make[s] the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. There is a close and well-established connection between firearms and the drug trade, and "we often have held that evidence of firearms is relevant and admissible in a prosecution of drug trafficking charges." United States v. Sherman, 440 F.3d 982, 986 (8th Cir. 2006); see United States v. Ruiz, 412 F.3d 871, 881 (8th Cir. 2005) ("Firearms are tools of the drug trade due to the dangers inherent in that line of work."). The presence of firearms in the garage where Quintero received drugs and dispatched large sums of money to the west coast made the fact of his involvement in the drug conspiracy more probable. Moreover, photographs, video footage, and testimony confirm that Quintero regularly accessed the garage. The evidence was thus properly admitted.

Quintero also argues that Agent Franolla's testimony about Quintero's account of a drive-by shooting was irrelevant. Similarly, this testimony was relevant in that it demonstrated Quintero's willingness to use violence and made his involvement in the drug conspiracy more likely. We identify no error, let alone plain error, in the district court's failure to exclude this evidence sua sponte based on relevance.

Quintero also argues that the firearm and drive-by shooting evidence should have been excluded under Federal Rule of Evidence 403. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403. Quintero did not object to the admission of this evidence. The district court did not plainly err in failing to exclude the evidence sua sponte on prejudice grounds.

## 2. Manager or Supervisor Enhancement

Quintero contends that the district court erred in imposing the three-level enhancement for his role in the offense. At sentencing, the district court found that Quintero was in a position of authority and that he directed a large number of people. Further, the district court considered the nature and scope of Quintero's criminal activity that was manifest throughout the record and concluded that Quintero served as the central depot and transfer point for large quantities of drugs.

We review for clear error the district court's factual findings underlying the imposition of a role enhancement. United States v. Rosas, 486 F.3d 374, 376 (8th Cir. 2007).

A defendant's offense level may be increased by three levels if he "was a manager or supervisor . . . and the criminal activity involved five or more participants . . . ." U.S.S.G. § 3B1.1(b). "We construe the terms 'manager' or 'supervisor' broadly under U.S.S.G. § 3B1.1." United States v. Erhart, 415 F.3d 965, 973 (8th Cir. 2005). The sentencing court may consider factors such as:

[T]he exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1 cmt. n.4; Rosas, 486 F.3d at 376.

We conclude that the district court's imposition of the three-level enhancement was not clearly erroneous. Quintero met with couriers, coordinated the receipt of large quantities of drugs, sent couriers to other locations with instructions, and coordinated the loading and shipment of millions of dollars in drug proceeds. Quintero exercised management responsibility over both individuals and significant assets of the organization. See U.S.S.G. § 3B1.1 cmt. n.2 ("An upward departure may be warranted . . . in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization.").

### III.

Quintero's conviction is affirmed, as are all of the defendants' sentences.

BRIGHT, Circuit Judge, concurring.

I concur in the opinion and judgment with the following observation. Ordinarily computation of the guideline sentence for couriers (often referred to as "mules") in drug cases include minor participant role reductions, particularly when, as here, the probation office and the prosecutor made such a recommendation.

Although the district court in this case rejected those recommendations, the judge sentenced Adamson, Bakken, and Larson below the advisory guideline range

upon taking account of the sentencing factors and the government's downward departure motion for substantial assistance. As we know, *United States v. Booker*, 543 U.S. 220 (2005), rendered the guidelines advisory. Here, the sentences reflect the district court's careful consideration of section 3553(a)'s purpose, and based on the record as a whole, the sentences are reasonable.

Accordingly, I join in the affirmance.

_____