# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3306

_____

|  |  |  |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Robert Schiradelly, | * | |
| | * | [PUBLISHED] |
| Appellant. | * | |

_____

Submitted: June 15, 2010
Filed: August 10, 2010

_____

Before LOKEN, ARNOLD and GRUENDER, Circuit Judges.

_____

PER CURIAM.

On the night of July 19, 2008, Cheyenne River Sioux Tribal Police Officer Gordon Runs After, Jr., spotted Robert Schiradelly driving a Pontiac Grand Am in the town of Eagle Butte, South Dakota. Officer Runs After received information that the Grand Am might have been stolen from a car dealership in nearby Sioux Falls. He activated his emergency lights and attempted to stop Schiradelly. Schiradelly fled, and Officer Runs After gave chase.

A dramatic high-speed chase through Indian country ensued, lasting more than an hour. Schiradelly drove through Eagle Butte ignoring stop signs, driving in excess

of 60 miles per hour in areas where the speed limit was 20 miles per hour, and swerving around other police cars that were attempting to stop him. As Schiradelly left the town limits at 90 miles per hour, he nearly lost control of the car, sliding into a roadside ditch before recovering. Beyond the town limits, the chase reached speeds of 110 miles per hour. Approximately 50 miles outside of Eagle Butte, Schiradelly turned around and headed back toward town.

Tribal officers made several unsuccessful attempts to prevent Schiradelly from re-entering Eagle Butte. They deployed spike strips across the highway, which deflated Schiradelly's front-left tire, but Schiradelly continued fleeing, driving on the tire rim at 65 miles per hour. When officers drove alongside Schiradelly and attempted to box him in, Schiradelly swerved and avoided them. In a further attempt to stop Schiradelly, Officers Robert Woods and Erik Twite used their patrol car to block the highway. When Schiradelly tried to drive around the patrol car, Officer Woods drove forward in an attempt to block Schiradelly's path. Schiradelly then crashed into the front driver's side of the patrol car, and both vehicles fell into the roadside ditch. Schiradelly continued to drive toward Eagle Butte in the ditch, and Officer Woods struck Schiradelly's car with his patrol car. Schiradelly nonetheless continued, returning to the highway.

Schiradelly re-entered Eagle Butte, where he drove across backyards and fields in a residential area. He stopped briefly at one house to drop off his passenger, but then continued through the residential area. Schiradelly was finally arrested in front of another residence in the area. While no officers were injured in the chase, Officer Woods's patrol car sustained $3,682.16 in damage.

A federal grand jury returned an indictment against Schiradelly, charging him with larceny for stealing the Grand Am, assault against Officer Woods, and assault

against Officer Merrill Bruguier, another officer involved in the chase.[1]  Schiradelly pled guilty to assaulting Officer Woods, and the remaining charges were dismissed as part of a plea agreement.  In the plea agreement, the Government also agreed to recommend a sentence within the advisory guidelines range.  A Presentence Investigation Report ("PSR") calculated Schiradelly's offense level to be 13 and his criminal history category to be IV, yielding an advisory guidelines range of 24 to 30 months.  At sentencing, the Government recommended a sentence within that range.  The district court[2] departed upward to criminal history category VI and offense level 16, which resulted in a new guidelines range of 46 to 57 months, and sentenced Schiradelly to 57 months' imprisonment.  The court noted that, in the alternative, it would vary from the original guidelines range under 18 U.S.C. § 3553(a) to the same sentence.  Schiradelly appeals his sentence.

Schiradelly first argues that the district court violated the plea agreement by sentencing him above the guidelines range calculated in the PSR.  Schiradelly argues that, by stating, "I do accept the Plea Agreement," the district court bound itself to sentence him within the guidelines range that the Government agreed to recommend. "Issues concerning the interpretation and enforcement of a plea agreement are reviewed de novo."  *United States v. Paton*, 535 F.3d 829, 835 (8th Cir. 2008) (quoting *United States v. Borer*, 412 F.3d 987, 994 (8th Cir. 2005)).

Schiradelly's argument is meritless.  The plea agreement specifically stated that "[t]he United States and the defendant agree that this Plea Agreement . . . [is] presented to the Court pursuant to Rules 11(c)(1)(A) and 11(c)(1)(B)."  Rule

---

[1]More precisely, Schiradelly was charged with assault on a federal officer, *see* 18 U.S.C. § 111, as Officers Woods and Bruguier were tribal officers employed through a contract with the Bureau of Indian Affairs.

[2]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

11(c)(1)(B) makes clear that although the Government will "recommend . . . that a particular sentence or sentencing range is appropriate[,] . . . *such a recommendation or request does not bind the court*." (Emphasis added.) The plea agreement also noted that the sentencing recommendations "are not binding on the Court and that the defendant may not withdraw his plea of guilty if the Court rejects such recommendations." In the plea colloquy, the district court reiterated this, and Schiradelly confirmed that he understood the non-binding nature of the recommendations. *See* Fed. R. Crim. P. 11(c)(3)(B). Thus, it is clear that the plea agreement's sentencing recommendation was just that—a recommendation.[3]

Schiradelly essentially argues that, by accepting the plea agreement, the district court somehow converted the agreement's sentencing recommendation under Rule 11(c)(1)(B) to an agreement under Rule 11(c)(1)(C) that would bind the district court. *See* Fed. R. Crim. P. 11(c)(1)(C) (noting that a sentencing recommendation under this section "binds the court once the court accepts the plea agreement"). Schiradelly relies solely on *United States v. Cunavelis*, 969 F.2d 1419 (2d Cir. 1992), in which he suggests "the Second Circuit clearly said a district court is bound by the terms of a plea agreement it accepts." However, the plea agreement in *Cunavelis* explicitly bound the district court to its terms under Rule 11(c)(1)(C).[4] *See id.* at 1422-23. The

_____

[3]In the plea agreement, the Government also agreed to move to dismiss the charges of larceny and assault against Officer Bruguier under Rule 11(c)(1)(A). Unlike the Rule 11(c)(1)(B) sentencing recommendation where the court need only advise the defendant that he "has no right to withdraw the plea if the court does not follow the recommendation," Fed. R. Crim. P. 11(c)(3)(B), the Court is required to accept or reject the Rule 11(c)(1)(A) provisions of a plea agreement, *see* Fed. R. Crim. P. 11(c)(3)(A). The district court duly accepted this part of the plea agreement and was bound to grant the Government's motion to dismiss the remaining charges, as it ultimately did.

[4]The plea agreement in *Cunavelis* actually cited Rule 11(e)(1)(C), *see Cunavelis*, 969 F.2d at 1422, the predecessor to Rule 11(c)(1)(C), *see United States v. Scurlark*, 560 F.3d 839, 841 n.2 (8th Cir. 2009), *cert. denied* 558 U.S. ---, 130 S. Ct. 738 (2009).

Second Circuit did not purport to say anything about a sentencing recommendation made under Rule 11(c)(1)(B), which Schiradelly's plea agreement contained. Because the sentencing recommendation in Schiradelly's agreement remained non-binding under Rule 11(c)(1)(B), the district court did not violate the plea agreement.

Next, Schiradelly argues that at sentencing the district court applied the "wrong standard," because, after pronouncing its sentence the court described Schiradelly's sentence as "a reasonable sentence under all the circumstances," rather than one it concluded to be "sufficient, but not greater than necessary" to satisfy the purposes of sentencing, 18 U.S.C. § 3553(a). "We review a district court's sentence for abuse of discretion." *United States v. Bryant*, 606 F.3d 912, 918 (8th Cir. 2010). As an alleged error of law, applying the "wrong standard" at sentencing would, by definition be an abuse of discretion. *See United States v. Weiland*, 284 F.3d 878, 882 (8th Cir. 2002).

Contrary to Schiradelly's claim, the record shows that the district court properly understood and undertook its obligations under 18 U.S.C. § 3553(a). The court engaged in a thorough discussion of Schiradelly's offense and criminal history, and it concluded that a sentence within the original guidelines range would not be sufficient under the circumstances. After deciding that an upward departure was appropriate, the court noted that Schiradelly's ultimate sentence was imposed pursuant to 18 U.S.C. § 3553, and the court gave a detailed analysis of the § 3553(a) factors in crafting its sentence. Schiradelly's argument suggests that courts must always recite the words "sufficient, but not greater than necessary" when sentencing a defendant, but we have consistently refused to impose rote recitation requirements on district courts at sentencing. *See, e.g.*, *Bryant*, 606 F.3d at 919. On the whole, the record reveals that the district court properly fulfilled its obligations under 18 U.S.C. § 3553(a) in sentencing Schiradelly.[5]

---

[5]To the extent Schiradelly argues that the district court applied an impermissible presumption of reasonableness to the guidelines range, *see* United *States v. Greene*, 513 F.3d 904, 907-08 (8th Cir. 2008), we disagree. The district court acknowledged

Finally, Schiradelly challenges the district court's decision to depart. "We review the district court's decision to grant an upward departure for abuse of discretion." *United States v. D'Andrea*, 473 F.3d 859, 863 (8th Cir. 2007). The district court gave several reasons for its decision to depart. First, the court found that criminal history category IV understated Schiradelly's criminal history, based on the seriousness of Schiradelly's past offenses and the likelihood that Schiradelly will commit future offenses. *See* U.S.S.G. § 4A1.3(a)(1). Schiradelly argues that the criminal history component of the guidelines calculation already captured these concerns, since he received criminal history points for each of his previous convictions as well as additional points for committing the current offense while on probation and within one year of being released from a term of imprisonment. *See* U.S.S.G. § 4A1.1. Nonetheless, an upward departure is permissible for the precise reasons the district court identified here. *See* U.S.S.G. § 4A1.3(a)(1). As the district court noted, Schiradelly's criminal history includes two escapes from custody. During one escape, he and an accomplice hit an officer in the face with a brick and fractured another officer's ribs. Schiradelly was also convicted of another assault as well as grand theft, for which Schiradelly had not paid the court-ordered restitution. Schiradelly has committed several serious crimes, some involving violence, and he has demonstrated a propensity to recidivate. In light of these circumstances, we find no abuse of discretion in the court's conclusion that Schiradelly's criminal history category did not fully account for either the seriousness of his crimes or his likelihood of recidivism. *See United States v. Jones*, 596 F.3d 881, 883 (8th Cir. 2010).

The court also departed upward 3 levels to offense level 16, taking into account the nature of Schiradelly's offense, *see* U.S.S.G. § 5K2.0, and the charges dismissed

---

it was free to vary from the guidelines range, and the mere conclusion that an ultimate sentence is reasonable is not equivalent to presuming the guidelines range to be reasonable. *See United States v. Escobar-Quintanilla*, --- F.3d ---, 2010 WL 2890270 at *1 n.2 (8th Cir. July 26, 2010); *United States v. Deegan*, 605 F.3d 625, 631 n.2 (8th Cir. 2010).

as part of the plea agreement, *see* U.S.S.G. § 5K2.21. Schiradelly argues that the Guidelines's enhancement for reckless endangerment during flight, *see* U.S.S.G. § 3C1.2, fully accounted for the danger associated with his attempt to escape during the prolonged high-speed car chase. However, we agree with the district court's conclusion that "this is far beyond the normal case of obstruction of justice or where an adjustment is made for . . . reckless endangerment during flight." *See* U.S.S.G. § 5K2.0 (permitting a departure where circumstances already considered in the Guidelines are "present in the offense to a degree substantially in excess of . . . that which ordinarily is involved in that kind of offense"). Furthermore, Schiradelly challenges the district court's departure under § 5K2.21, arguing that the Government did not sufficiently prove the dismissed charges, and therefore they should not have been considered. *See United States v. Azure*, 536 F.3d 922, 933 (8th Cir. 2008) ("In order to rely upon a dismissed charge for purposes of sentencing, the government must prove the defendant committed the alleged offense by a preponderance of the evidence."). However, fact statements in the PSR, to which Schiradelly did not object, adequately supported a finding that the dismissed charges were properly proved. *See United States v. Cullen*, 432 F.3d 903, 905 (8th Cir. 2006). The PSR noted that Schiradelly drove at Officer Bruguier, forcing him into a roadside ditch, and that the Grand Am Schiradelly drove during the chase had recently been stolen. *See United States v. Triplett*, 104 F.3d 1074, 1078 (8th Cir. 1997) ("The possession of property recently stolen 'is ordinarily a circumstance from which a jury may reasonably . . . find . . . that the person in possession . . . *participated in some way in the theft* of the property.'" (quoting *United States v. Nabors*, 726 F.2d 642, 653 (8th Cir. 1985)). Thus, we find no abuse of discretion in the district court's decision to depart upward 3 levels based on the circumstances of the offense and the dismissed charges.

We therefore affirm Schiradelly's sentence.

_____