# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1589

_____

United States of America

*Plaintiff - Appellee*

v.

Jesus Adam Lizarraga

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa, Waterloo

_____

Submitted: January 13, 2017
Filed: April 6, 2017
[Unpublished]

_____

Before WOLLMAN, MURPHY, and MELLOY, Circuit Judges.

_____

PER CURIAM.

Jesus Adam Lizarraga pleaded guilty to conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846, and to money laundering in violation of 18 U.S.C. § 1956(a)(3)(B). The district court[1]

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

sentenced him to 264 months' imprisonment on the conspiracy charge and a concurrent 240 months on the money-laundering charge. Lizarraga challenges his sentence. We affirm.

In late 2013, Chad Weyland, Seth Beard, and Sara Weissenfluh were distributing "ice" methamphetamine (ice) in and around Waterloo, Iowa. Lizarraga, who lived in California, recruited Weyland and Beard to distribute ice for him in Iowa. Weyland and/or Beard made at least three trips to Omaha, Nebraska, between December 2013 and April 2014, each time obtaining between three and five pounds of ice from Lizarraga. Weyland and Beard later had a falling out, and Lizarraga instructed Beard not to work with Weyland any longer.

In April 2014, Weissenfluh drove from Iowa to California to obtain five pounds of ice from Lizarraga. Lizarraga "and his associates in California" hid the ice in the spare tire of Weissenfluh's vehicle before she drove back to Iowa. Weissenfluh and Beard then sold the ice in Iowa, where Lizarraga later arrived to collect the proceeds from these sales. Weissenfluh drove to California to obtain ice from Lizarraga again in May 2014. The ice was again concealed in the spare tire of Weissenfluh's vehicle, but this time Lizarraga directed Weissenfluh to drive the ice back to Iowa and then to wait for him to provide further instructions regarding distribution of the drugs. On the return drive, Weissenfluh was stopped by Mesquite, Nevada, law enforcement officers for a traffic violation. After a drug dog alerted to Weissenfluh's vehicle, officers obtained a warrant, searched the vehicle, and recovered just under five pounds of 100% pure ice methamphetamine from the spare tire in the trunk. Weissenfluh thereafter began cooperating with law enforcement officers. She informed officers in July 2014 that Lizarraga had called and instructed her to deposit cash into the U.S. Bank account for "Christopher Grande" as payment for a portion of the ice that, unbeknownst to Lizarraga, had been seized from Weissenfluh's vehicle in May 2014. An officer followed Lizarraga's instructions to

Weissenfluh and deposited $5,000 in government funds into the "Christopher Grande" U.S. Bank account.

In February 2015, Lizarraga contacted Weissenfluh and asked to meet with her in Waterloo. Weissenfluh notified officers, who provided her with a recording device. During the meeting, Lizarraga offered to "front" one pound of ice, which Weissenfluh would sell in Iowa on his behalf. Later that day, Lizarraga provided the ice, for which Weissenfluh agreed to pay $12,000. Weissenfluh paid Lizarraga a total of $10,500 in government cash in two installments. Lizarraga gave Weissenfluh a note listing a "Hispanic name" and a Mexican bank account and instructed her to deposit the remaining $1,500 in that account. Weissenfluh wired $1,500 in government funds as instructed on March 10.

Lizarraga contacted Weissenfluh again in June 2015 and offered to supply her with two pounds of ice. Weissenfluh notified officers, who set up surveillance on Lizarraga's hotel room after he arrived from California. Lizarraga arranged to meet Weissenfluh on June 28 to deliver the ice. Lizarraga was stopped by officers en route to the meeting. After a drug dog alerted to Lizarraga's vehicle, officers recovered two packages of ice from a backpack in the vehicle. A later search of Lizarraga's hotel room pursuant to a warrant led to the recovery of an additional three packages of ice for a total of almost five pounds of 99.6% pure ice methamphetamine.

Lizarraga entered into an agreement with the government, pleading guilty to the drug-conspiracy and money-laundering charges and stipulating to the facts set forth above. A presentence report (PSR) was then prepared, which set forth the offense conduct in more detail. The PSR recommended application of a three-level, aggravating-role adjustment under § 3B1.1(b) of the U.S. Sentencing Guidelines Manual (Guidelines or U.S.S.G.) based on Lizarraga's role as a "manager or supervisor" of criminal activity that involved "five or more participants or was

otherwise extensive." Lizarraga objected to the adjustment, but he did not contest any of the underlying facts upon which it was based.

The parties presented no additional evidence at the sentencing hearing, relying instead on the stipulated facts set forth in the plea agreement and the uncontested facts set forth in the PSR. The district court applied the aggravating-role adjustment over Lizarraga's objections, finding "by a preponderance of the evidence" that Lizarraga managed or supervised "criminal activity involving five or more participants or a criminal conduct that was otherwise extensive." Lizarraga's resulting advisory Guidelines sentencing range was 235 to 293 months' imprisonment. After "examin[ing] the case as a whole," and considering the parties' briefs on the issue, the district court found "no basis for a [downward] variance in this case." The court then discussed the § 3553(a) sentencing factors and concluded that the sentence that was "sufficient, but not greater than necessary, to achieve the goals of sentencing [was] a mid-range sentence of 264 months" on the drug-conspiracy charge and a concurrent sentence of 240 months on the money-laundering charge. Lizarraga argues that the district court erroneously applied the aggravating-role adjustment, improperly presumed that a Guidelines sentence was reasonable, and failed to adequately explain the basis for its sentencing decision.

"'The district court's factual findings, including its determination of a defendant's role in the offense, are reviewed for clear error,' while its 'application of the guidelines to the facts is reviewed de novo.'" United States v. Gaines, 639 F.3d 423, 427-28 (8th Cir. 2011) (quoting United States v. Bolden, 622 F.3d 988, 990 (8th Cir. 2010) (per curiam)). The court's factual findings "must be supported by a preponderance of the evidence," and we will disturb those findings only if they are "unsupported by substantial evidence, [are] based on an erroneous view of the applicable law, or [if] in light of the entire record, we are left with a firm and definite conviction that a mistake has been made." United States v. Starks, 815 F.3d 438, 441 (8th Cir. 2016) (quoting United States v. Walker, 688 F.3d 416, 421 (8th Cir. 2012)).

The district court may accept as true for sentencing purposes those specific factual allegations set forth in the PSR to which the defendant does not object. See United States v. Pepper, 747 F.3d 520, 523 (8th Cir. 2014).

Based on the factual stipulations set forth in the plea agreement and the uncontested facts set forth in the PSR, the district court found that an aggravating-role adjustment under § 3B1.1(b) was appropriate. Lizarraga recruited Weyland and Beard to distribute ice for him in Iowa and later instructed Beard not to work with Weyland. Lizarraga "and his associates in California" hid ice in Weissenfluh's vehicle, Lizarraga directed Weissenfluh to drive the second shipment of ice to Iowa and then wait for his further instructions regarding distribution, and Lizarraga directed Weissenfluh to deposit drug proceeds in particular bank accounts. These facts were sufficient to prove by a preponderance that Lizarraga was a manager or supervisor for purposes of the § 3B1.1 aggravating-role adjustment. See Bolden, 622 F.3d at 990 (noting that "the simple fact that a defendant recruits new members into a conspiracy supports a finding" that he was a manager or supervisor); U.S.S.G. § 3B1.1 cmt. n.4 (noting that "the exercise of decision making authority" and "the degree of control and authority exercised" over other participants in criminal activity weighs in favor of the adjustment).

The factual stipulations set forth in the plea agreement and the uncontested facts set forth in the PSR also indicated that the drug conspiracy involved five or more participants, namely, Lizarraga, Weissenfluh, Beard, Weyland, and "[Lizarraga's] associates in California," who helped hide ice in Weissenfluh's spare tire. These facts were sufficient to prove by a preponderance that Lizarraga managed or supervised criminal activity involving five or more participants, even though the California associates were not identified by name. See, e.g., United States v. Cortez-Diaz, 565 F. App'x 741, 750 (10th Cir. 2014) (affirming application of the § 3B1.1 adjustment even though last names of two participants were unknown); United States v. Thomas, 373 F. App'x 538, 540-41 (6th Cir. 2010) (upholding aggravating-role

adjustment based on eleven possible participants, including two with unknown last names); United States v. Mansoori, 304 F.3d 635, 668 (7th Cir. 2002) (noting that "in some cases, the evidence may leave no doubt that the defendant directed another culpable participant but may not reveal that person's name" and citing cases); United States v. Fells, 920 F.2d 1179, 1182-83 (4th Cir. 1990) (affirming application of aggravating-role adjustment where district court found that unnamed "lower-level drug dealers" were participants).

In addition to establishing that there were five or more participants, the evidence was also sufficient to show that the criminal activity was "otherwise extensive" for purposes of the § 3B1.1 aggravating-role adjustment. The "nature and complexity of the operation and its geographical reach" are relevant in determining whether the activity was extensive. United States v. Rosas, 486 F.3d 374, 377 (8th Cir. 2007) (quoting United States v. Vasquez-Rubio, 296 F.3d 726, 729 n.3 (8th Cir. 2002)). Lizarraga, as well as participants acting on his behalf, traveled between California and Iowa to retrieve or deliver large quantities of high-purity ice and proceeds from drug sales, and Lizarraga directed that proceeds from drug sales be deposited in or wired to both U.S. and Mexican bank accounts opened in other peoples' names. These facts were sufficient to prove by a preponderance that the criminal activity was "otherwise extensive" for purposes of the § 3B1.1 aggravating-role adjustment.

Lizarraga also challenges his sentence, arguing that the district court erred by failing to adequately explain the basis for its sentencing decision, by presuming that a Guidelines sentence was reasonable, and by failing to properly consider the 18 U.S.C. § 3553(a) sentencing factors.[2]  We review the district court's sentencing

---

[2]Lizarraga concedes that because he did not object before the district court, the plain-error standard of review applies to his claims that the court did not adequately explain its sentencing decision and that it applied a presumption of reasonableness to the Guidelines sentence. See United States v. Pate, 518 F.3d 972, 975 (8th Cir.

determinations under a deferential abuse-of-discretion standard, first ensuring that the court committed "no significant procedural error," and then considering the "substantive reasonableness" of the ultimate sentence. Gall v. United States, 552 U.S. 38, 51 (2007).

After properly calculating the Guidelines range, the court noted that it was required to "examine the case as a whole" in light of the § 3553(a) factors and determine "whether or not [it] must vary from the advisory guideline range" to impose an appropriate sentence. The court expressly considered Lizarraga's various arguments in support of a downward variance, it discussed several of the § 3553(a) factors in detail, and it finally stated that, "[a]fter considering all the statutory factors, everything [it knew] about the case and all the arguments made orally and in writing, . . . the sentence that is sufficient, but not greater than necessary, to achieve the goals of sentencing is a mid-range sentence of 264 months." Contrary to Lizarraga's arguments, the court did not presume that a Guidelines sentence was reasonable, noting instead that it was not bound by the Guidelines and that they were "one of several factors" that the court was required to consider. See, e.g., United States v. Shiradelly, 617 F.3d 979, 983 n.5 (8th Cir. 2010) (per curiam) ("The district court acknowledged it was free to vary from the guidelines range, and the mere conclusion that an ultimate sentence is reasonable is not equivalent to presuming the guidelines range to be reasonable.").

Nor did the court inadequately explain its sentencing decision. The court stated that it had considered all of the § 3553(a) factors, Lizarraga's arguments for a downward variance, the facts and history set forth in the PSR, and the drug quantity involved in the conspiracy, and it concluded that a sentence in the middle of the

---

2008) ("We review for plain error an argument not raised at sentencing."). Because these claims fail under any standard of review, we consider all of Lizarraga's sentencing arguments under the abuse-of-discretion standard of review.

advisory Guidelines range was appropriate. District courts are given "wide latitude" to weigh the § 3553(a) factors, including the latitude to assign some factors more or less weight than a defendant would prefer. See United States v. Anderson, 618 F.3d 873, 883 (8th Cir. 2010). Moreover, "when a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation." Rita v. United States, 551 U.S. 338, 356 (2007); see also Anderson, 618 F.3d at 882-83 (noting that a district court "need not categorically rehearse each of the § 3553(a) factors on the record when it imposes a sentence as long as it is clear that they were considered" (citations omitted)).[3] The district court committed no procedural error, the sentence is not substantively unreasonable.

The judgment is affirmed.

_____

_____

[3]To the extent Lizarraga argues that the Guidelines are unsupported by empirical evidence and result in unduly severe sentences for methamphetamine offenses, these policy arguments are not properly made to this Court. See United States v. Coleman, 635 F.3d 380, 383 (8th Cir. 2011). Although the district court could have varied from the Guidelines based on such a policy disagreement, it was not required to do so. See id.